## CRAVENS *et al., Appellants,* v. RODGERS.

1. **Carriers of Passengers:** DISCRIMINATION: PUBLIC POLICY. The owner of an omnibus line, who has made an approach to a railroad platform under an oral agreement with the agent of the railroad company that he should have its exclusive use, cannot limit the teams of a competing line to other parts of the platform at which the chance of obtaining passengers is not so good, and to which in dry weather vehicles can be driven with some difficulty, while in wet weather it is very hard to do so.

2. ——— : ——— : ——— : CONSTITUTION. The agreement to give the exclusive privilege is against public policy and the spirit of the state constitution (art. 12, sec. 23), which prohibits "discrimination in charges, or facilities in transportation, * * * between companies and individuals, or in favor of either."

*Appeal from Daviess Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

AFFIRMED.

*Hicklin & Yates* for appellants.

( 1 ) The railroad had the power to authorize Haynes to build platform for his exclusive use. 2 Redfield, Railways [3 Ed.] sec. 184, pp. 225–6; 1 Redfield, Railways, sec. 27, p. 93, par. 2. The exercise of the license

is neither a monopoly nor an infraction of public policy. *Richmond v. Railroad*, 26 Iowa, 191. (2) If the Haynes platform occupied all the ground south of the platform at depot on which carriages could approach for passengers, so that respondents would have to go on Haynes' platform or be excluded from railroad platform, then respondents would have a right equal with appellants to go upon, and occupy, the Haynes platform. 4 Fed. Rep. 284. But the evidence shows there was a space of thirty feet, immediately west of the Haynes platform, about as favorable for getting passengers as the space covered by the Haynes platform ; and, except in times of mud, could be occupied by respondents with their carriages with comparative ease and comfort. Appellants, in a spirit of fairness, offered their thirty feet of platform to respondents to be enjoyed in common, provided respondents would add ten feet of platform on the west end of appellants' platform, but this reasonable offer was refused. The right to the exclusive use of the platform, acquired by Haynes from the railroad, was acquired by appellants from Haynes. Respondents desire to invoke the primeval rules of property, by which all things were free to all persons, by which labor bestowed on a chattel, or a rude home, in fashioning it to the fancy and comfort of the occupant, would be lost by laying the chattel down, or turning the back on the home, to be enjoyed by the next man who happened to come that way, till the results of such a system were regarded as a hardship on the provident man, when the system was changed, so as to allow each man to permanently enjoy the fruits of his own care and industry. If a man, by proper permission, puts up a hitching post in front of his dwelling or place of business, on a public street, does not the use of the post belong exclusively to him who put it up, there being ample room for others to erect a like convenience?

*Rush, Alexander & Stephens* for respondent.

BRACE, J.—This is an action to enjoin defendants from using a platform at a railroad depot. Plaintiffs allege in their petition that as owners they are engaged in operating a bus, hack and carriage line between the city of Gallatin and the depot of the Chicago, Rock Island and Pacific railroad, distant about a half mile from said city, and that defendants also own and operate a similar line between said city and said depot.

"That one Scott T. Haynes, on or about the —— day of November, 1883, while he was engaged in operating the said line now owned and operated by said plaintiffs, made and constructed by and with the consent of the Chicago, Rock Island and Pacific Railroad Company (which said railroad company plaintiffs aver is a corporation duly organized and existing under the laws of the state of Missouri, which on said day last aforesaid operated and controlled, and now operates and controls, the railroad on which said depot is situate), a platform of wood and stone, at great expense to him the said Scott T. Haynes, beginning about ten feet west of the west end of said depot, extending west about thirty feet along and adjoining to the platform constructed and maintained by the said railroad company for the accommodation of passengers, and south about twenty-three feet from the said platform so constructed by the said railroad company. That the said platform, constructed by the said Haynes aforesaid, was made upon the ground of the said railroad company with their full knowledge and express consent, for the especial use of him, the said Haynes, and none other, in order that his teams and vehicles might have a place on which to back up to, or approach, the said platform at the said depot for the reception of passengers and baggage, free of mud, and a heavy grade.

"That the said Haynes continued to use and enjoy the platform by him constructed as aforesaid, from and after the date of its construction, in pursuance of the

license, permission and consent of the said Chicago, Rock Island and Pacific Railroad Company, till on or about the third day of March, 1885, when he, the said Haynes, sold and transferred his bus, hack and carriage line, with all its privileges and immunities, embracing the privilege and license to use and occupy and enjoy said platform constructed by him as aforesaid, to plaintiffs herein.

"That the defendants, without the consent, and against the will and wish of plaintiffs, have driven upon, and used and occupied said platform constructed by said Haynes as aforesaid, and thereby have prevented plaintiffs from reaching the main platform at said depot, except at a place where the grade is heavy, and the mud often deep. That by so doing the defendants have deprived, and continue to deprive, plaintiffs of the free use of their property, purchased from the said Haynes as aforesaid, and have thereby greatly damaged plaintiffs in the lawful exercise of their business. That defendants threaten to continue to use and occupy said platform constructed by said Haynes, although often requested by plaintiffs not to do so."

The material part of the answer is as follows:

" Come now the defendants, and for answer to plaintiffs' petition herein, deny each and every allegation contained therein, except such as is hereinafter expressly admitted. Further answering, defendants admit, as alleged in plaintiffs' petition, that plaintiffs and defendants, at the time alleged in said petition, were, and have ever since been, the owners of competing hack lines, running between the town of Gallatin, Daviess county, Missouri, and what is known as the Rock Island depot, about one-half mile northwest of said town of Gallatin. That the platform set forth in plaintiffs' petition is so located at said depot; that if said plaintiffs are given the sole use and occupancy thereof, it would give the plaintiffs such an advantage

over these defendants as ultimately to destroy their business. That the passengers getting off of the trains stopping at said depot are compelled to pass by and in front of the hacks and carriages of the plaintiffs before reaching the carriages and hacks of these defendants, thereby giving plaintiffs the first opportunity to solicit the patronage of said passengers so alighting from said trains. That the space so occupied by the said platform erected by the said Haynes, and to the use and possession of which these plaintiffs claim the exclusive right, extends along and adjoining that part of the elevated platform erected by the railroad company where all passenger trains stop and receive and discharge passengers and baggage, the most usual place at which said trains take on and discharge passengers and baggage being at or near the east end of the platform to which plaintiffs claim the exclusive right, and defendants are forced, with their hacks and conveyances, to take a position to the west of said platform, and about fifty feet away from the point where the passengers and baggage are usually received and discharged by said railway, where the grade is steep and where the mud at different seasons of the year is deep and miry, making approach to the railroad platform inaccessible. That by reason of said exclusive use and enjoyment of said platform by plaintiffs they have and enjoy greater privileges and advantages than these defendants, in soliciting the carrying of passengers and baggage to and from the several passenger and accommodation trains, run and operated on said road, whereas they have the right to equal advantages and privileges to those enjoyed by plaintiffs and all others engaged in like business."

The reply was a general denial.

The evidence tended to prove that the platform, or approach to the depot platform in question, was built by Haynes in 1882, at a cost of about fifty dollars, with

the verbal consent of the station agent, with the understanding between him and the agent that he, Haynes, was to have the exclusive use of it for the purpose of driving and backing his teams thereon to receive passengers, and that when he sold out to the plaintiffs this privilege was included in the transfer. The depot platform for passengers to alight upon extended west of the depot building for some distance. The space immediately in the rear of this west extension of the depot platform and next to the building for a distance of about thirty feet is occupied by this approach which is twenty-three feet wide and adjoins the depot platform, leaving a space west of the approach immediately in rear of the depot platform and thirty-three feet along it, and about forty feet from the building, unoccupied. The railroad platform in front of this last space is higher than in front of the approach built by Haynes, the grade to the platform steep, and in wet weather the ground muddy. In dry weather vehicles can be driven or backed up to the platform in this space with some difficulty, and in wet weather it is very hard to do. The weight of the evidence is that vehicles at the platform on the approach in question would have a better chance of obtaining passengers than those at the platform west of it, although there is some evidence tending to show the chances are equal. At the hearing, the temporary injunction granted in vacation was dissolved, the plaintiff's bill dismissed, and damages assessed against him on the injunction bond.

The exclusive privilege which the plaintiffs claim, under their license from the railroad company's station agent, of occupying the space beside the railroad platform of easiest approach thereto, next to the station building, the objective point for the discharge of the railroad passengers, is a valuable one, giving the plaintiffs an advantage in carrying on their business over the defendants, their rivals, in the same line of business.

The business of both parties is that of common carriers for hire, on the same line, and by their connection with the railroad forming one continuous line, by which passengers are transported to the same general destination, the railroad company carrying them to its station near the city, and plaintiffs and defendants carrying them to their several destinations in the city. As common carriers it is the duty of each of the parties to transport all persons who offer to take and pay for passage with them, and they are charged with grave and responsible duties to such persons when they have once taken passage. They must make the trip whether they have one or many passengers. As a corollary of this duty to carry all, there ought to be a corresponding right upon the part of each to have the same facilities afforded them to obtain the passage in their respective vehicles of all such passengers as are brought to the point of connection by the connecting carrier, the railroad company, on the same general route. In this way the enterprise of each is encouraged, competition is stimulated, the price of transportation is kept within reasonable bounds ; the safest, best and most comfortable means of conveyance, a rapid passage and polite and agreeable service are apt to be secured to the traveling public.

On the other hand, if better facilities are afforded to one carrier than another by the connecting carrier, competition is discouraged, a monopoly created, and the traveling public are apt to receive a slow, uncomfortable, slovenly, negligent and expensive service. Monopolies are obnoxious to the spirit of our laws, and ought to be discouraged. This is the spirit of our constitutional provision which prohibits "discrimination in charges, or facilities in transportation * * * between transportation companies and individuals or in favor of either." Art. 12, sec. 23. And in this case we do not think the railroad company could give the plaintiffs the

exclusive privilege of approach to nearly one-half of its platform, and that the most desirable and advantageous half for procuring passengers, and thereby deny it to the defendants, both being there for the same purpose and in the same business of forwarding the railroad's passengers to their places of destination from the point where the railroad company landed them. Waiving the question of the station agent's authority in the premises, and making no point on the entire failure of the evidence to show that the defendants had ever used or threatened to use this platform or approach constructed by Haynes, we think the judgment is right upon the merits of the controversy. The judgment is affirmed. All concur, except BARCLAY, J., absent.