## HOBART-LEE TIE COMPANY, Appellant, v. STONE, Respondent.

**St. Louis Court of Appeals. Submitted, January 5; Opinion Filed January 26, 1909.**

1. **TRESPASS: Constructive Possession.** An action for trespass will lie without actual possession in the plaintiff at the time of the trespass; possession by agent, or constructive possession, is sufficient.

2. ———: ———: **Continuing Trespass: Injunction.** Injunction is the proper remedy where there are acts of repeated and continuous trespass; while a remedy at law for damages exists, it is not an adequate remedy in such cases.

3. **WATERS: Riparian Rights: Quasi Public Corporation.** A railroad company, having a tract of land adjacent its depot extending to the bank of a navigable river, is a riparian owner, owns the land to the water's edge at low water mark and has the right of access to the navigable part of the river in front of such premises and to the use of the water for all purposes not inconsistent with the public right of navigation therein.

4. **CORPORATIONS: *Quasi-Public Corporations: Right to Convey Land: Discrimination.*** A railroad company, being a quasi-public corporation, may dispose of or encumber its land as well as a strictly private corporation can, provided such disposition or encumbrance is for a legitimate purpose; but a railroad company can not lease or license its right of way or depot grounds in such way as to discriminate between shippers, giving one an advantage over an other engaged in the same kind of business, in facilities for loading and shipping. [Section 1127, Revised Statutes 1899.]

5. ———: ———: ———: ———. A railroad company had depot grounds near a river where rafts of ties were landed from the river to be loaded upon the trains of the railroad company for shipment, and owned a tract of land adjacent its depot ground and extending to the river where it was most convenient to land such tie rafts. It gave to a company, engaged in the business of floating ties down the river and shipping them from that point, a lease upon the land between the depot

grounds and the river where it was most convenient to land and pile the ties awaiting shipment. *Held*, such lease was a discrimination against a person engaged in the same business of shipping ties and contrary to section 1127, Revised Statutes 1899, and that such lessee could not prevent by injunction a rival shipper from using the landings and grounds covered by the lease.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*A. P. Murphy* for appellant.

Title to premises in dispute goes only to character of relief. If plaintiff is in actual possession and has been for many years he is not in a position nor has he occasion to sue. The defendant is proper party to bring action and if he neglects injunction will be made perpetual. Echelkamp v. Shrader, 45 Mo. 509; Sills v. Goodyear, 80 Mo. App. 134. Appellant has shown that the Frisco railroad and its grantors have been in possession of the land below the bridge, under color of title, for more than thirty-five years. And in actual possession, for rails laid upon the roadbed and fastened there so that engines and cars can pass over them become annexed to the land and cease to be personal property. Railroad v. Bradbury, 106 Mo. App. 450. The Frisco Railroad Company, as to the land below the bridge, is a riparian owner and as such in Missouri owns to the water's edge at low-water mark. State ex rel. v. Longfellow, 169 Mo. 128; Frank v. Goddin, 193 Mo. 394. And such riparian owner has the right of access to the navigable part of the river in front of his premises and to the use of the waters for all purposes not inconsistent with the public right of navigation thereon. Railway v. Stock Yards, 120 Mo. 552. Riparian rights are property; it constituting the chief value of the land. Myers v. City of St. Louis,

8 Mo. App. 266, 82 Mo. 378; Yates v. Milwaukee, 77 U. S. (10 Wall.) 497, 504, 19 L. Ed. 984. And cannot be arbitrarily or capriciously destroyed or impaired and when once vested the owner can only be deprived of it in accordance with established law. That is for the public good on due compensation. Ibid; Hollingsworth v. Parish of Tenasus (U. S.) 17 Fed. 109, 113; Hanford v. Railroad, 43 Minn. 104. A "riparian right" is the result of that full dominion which every one has over his own land, by which he is authorized to keep all others from coming upon it except upon his own terms. Steamboat Co. v. Steamboat Co., 109 U. S. 672, 27 L. Ed. 1070; O'Fallon v. Daggett, 4 Mo. 209; Turner v. Stewart, 78 Mo. 480; State ex rel. v. Longfellow, 169 Mo. 125.

*Watson & Holmes* for respondent.

(1) The court did not err in finding as a matter of fact that the lease executed by the St. Louis & San Francisco Railroad Company, dated May 24, 1907, and introduced in evidence by appellant was null and void. Every common carrier must carry for all to the extent of his capacity without undue or unreasonable discrimination either in charges or facilities. Const., sec. 23, art. 12; R. S. 1899, sec. 1127; Railroad v. Railroad, 110 U. S. 674. (2) The judgment in this case is clearly for the right party. Appellant's only right, if any, to the real estate leased from the railroad was merely that of a licensee and their being no evidence that it was in the actual possession thereof at any time that the acts of trespass complained of by it were committed it cannot maintain this action. A tenant (in this case a licensee) cannot maintain an action for trespass without actual possession at the time of trespass. If a tenant cannot maintain an action for trespass without actual possession, it follows as a matter of course that he cannot maintain an action to enjoin

a trespass against which he had no remedy directly. 28 Am. and Eng. Ency. Law (2 Ed.), 561; Heilbron v. Heinlen, 72 Cal. 371; Hampton v. Massey, 53 Mo. App. 501; Brown v. Hartgue, 87 Mo. 564, 568; Moore v. Perry, 61 Mo. 174.

REYNOLDS, P. J.—This suit was originally instituted in the circuit court of Phelps county, by filing a petition, sworn to by the attorney for plaintiff, in the office of the clerk of that court, on the twenty-eighth of May, 1907. On the filing of the petition, the circuit court of the county not being in session and the judge not then in that county, it was presented to the judge of the probate court who on the same day ordered that a temporary writ issue, "enjoining the defendant, his servants, agents and employees from landing his rafts of ties and timber upon and from hauling out onto, upon and across, or from piling upon and obstructing, and from obstructing the watercourse alongside of and on, and from interfering in any manner with the possession of the plaintiff of, in and to the premises described" (the description of the premises then being set out as in the original petition), "until the further order of the court, upon plaintiff filing with the clerk of the circuit court a bond in the sum of $250, conditioned as required by law." Copies of the petition and order, as well as a summons were duly served returnable to the September term of the circuit court. At the September term, 1907, of the circuit court of Phelps county, plaintiff filed an amended petition, in which it avers that it is a corporation, organized and existing under the laws of this State, engaged in buying and selling timber and railroad ties and that at the times mentioned in the petition it was and still is doing business in Phelps county, "principally along the Gasconade river and the town of Jerome therein; that ties and timber purchased

along the Gasconade river are conveyed by means of rafts down said river to plaintiff's landing near Jerome, removed from the water upon and then stored on its real property at and near Jerome and thence transported by rail; and in the carrying on of its business it is necessary to hold and use tracts of land for the purpose of drawing its timber and ties out of the water and for piling and storing its timber thereon until cars can be procured for loading the same for shipment." It is further averred that for that purpose plaintiff leased from the St. Louis & San Francisco Railroad Company, being the legal owner of the land, certain real estate in Phelps county which is described as follows: "Beginning at a point on the west bank of the Gasconade river, at Jerome, Phelps county, Missouri, one hundred feet perpendicularly distant in a northeasterly direction from the center line of the St. Louis & San Francisco Railroad; thence westerly and northerly on a curve line parallel to and one hundred feet from said center line, to a north line of section 24, township 37 north, range 10 west; thence east on said north line of section 24 to the west bank of said Gasconade river; thence south meandering the west bank of said Gasconade river to the place of beginning." It appears that this tract contains about five acres and has about 625 feet along the river front, according to the plat in evidence. We will hereafter refer to this piece as "the river tract." Three other parcels of land, designated in the amended petition as parcels Nos. 1, 2 and 3, are then described, which are apparently on the line of the right of way of the St. Louis & San Francisco Railroad Company, near and around the station at Jerome. The first tract seems to run 510 feet along the right of way line; the second tract 830 feet along the right of way line, and the third tract 210 feet along the right of way line. As we understand the testimony these three parcels do not appear to be contiguous, but in the original petition and in the order granting a

temporary injunction they are referred to as "a strip of land about 2100 feet long and fifty feet in width along the right of way of the St. Louis & San Francisco Railroad adjoining and alongside of its side track, in the town of Jerome." They will be referred to hereinafter as "the parcels," or by number. It is then averred in the amended petition that the leases are for periods of five years; that plaintiff entered into possession and is now and has for many years heretofore been in possession of the premises, using the land for the purpose of carrying on its business, "except as it is impeded and hindered by the defendant, as will fully appear as hereinafter stated. Plaintiff states for its proper use and enjoyment of the aforesaid premises and in the carrying on of its business, it is necessary that the same be free from trespassers and that the waters of the Gasconade river alongside of the same be and remain unobstructed so that the plaintiff may land its rafts at and on its said property and remove the same from the water and store the same until it can be transported as aforesaid." It is then averred that the defendant, "who is also engaged in buying and selling ties and timber, and well knowing the premises, and his servants and agents, over the objection of this plaintiff and to its detriment and irreparable injury, not susceptible in computation in damages, and without legal right or lawful authority, did on May 20, 1907, and divers other times, land his rafts of ties alongside of and on plaintiff's property; did haul the same out of the water and on and over, across and onto plaintiff's land as above described, and piled the same thereon, and obstructed the plaintiff's property and the use of the same for three days, when he removed his said ties; that the plaintiff was unable to use portions of his premises for storing or piling ties and timber thereon, until it could procure cars for the shipment of the same; that by the defendant piling his ties on plaintiff's property, it was obstructed from the railroad tracks

where the same could be loaded on the cars. Then on May 27, 1907, the defendant again landed a raft of ties alongside of and on the property of plaintiff as above described, and again, against the will of the plaintiff, hauled the same out of the water onto the plaintiff's land, and conveyed the same over, across and onto and piled the same on plaintiff's premises, as aforesaid, and again used, obstructed and damaged the property as aforesaid; that on or about June 6th, June 25th, June 28th, July 10th, August 6th and August 27, 1907, the defendant, his servants and agents, again and repeatedly trespassed upon the plaintiff's land as above described, in the same manner as aforesaid.

"Plaintiff states that the continued and threatened and wrongful use of the plaintiff's property and premises, as aforesaid, is a permanent source of annoyance to it, and to its enjoyment in the exercise thereof, and the use of its property and an injury thereto, and to the title thereof; that the repeated and threatened continuance of the wrongs of the defendant in trespassing on plaintiff's property are of such a character that it cannot be adequately and fully compensated by an award of damages, even were such damages capable of computation, and by reason of the premises plaintiff is without an adequate remedy at law, and is remediless except by the interposition of a court of equity."

"Wherefore, plaintiff prays that the defendant, his servants, agents and employees be restrained and enjoined from landing rafts or ties or timber upon the plaintiff's premises; from hauling his ties out, onto and across the same; from piling his ties upon and obstructing the property of the plaintiff, from obstructing the watercourse alongside of and on plaintiff's premises; from interfering in any manner with the possession of the plaintiff of, in and to its said premises; and for such other and further relief as to the court shall seem meet and just."

This amended petition was also sworn to and at this same September term, the defendant filed his answer in which he admits, in the first paragraph, the incorporation and organization of the plaintiff, as averred, and that defendant is the person and is engaged in the occupation as alleged in the petition, but denies all other allegations in the petition contained. The second paragraph of the answer is as follows:

"Further answering the defendant says that if the plaintiff has from the St. Louis and San Francisco Railroad Company, the leases on the lands as alleged in its petition, that the same is wholly void and of no force and effect, for the reason that said railroad company is a corporation duly organized as a railroad company under the laws of the State of Missouri as a common-carrier of passengers and freight for hire, and that the lands described in plaintiff's petition consist of and constitute said railroad company's grants and right of way in and about the public station of Jerome, in said Phelps county, Missouri, which said grants and right of way, it is the duty of said railroad company to keep open at all times to the public for the reception of passengers and freight offered to said company for shipment. And that if said leases have been executed as alleged by the plaintiff, the same is beyond the powers of said railroad company so to do, and is an unwarranted attempt on the part of said company to exclude from its public station and right of way, the public, for the benefit of said plaintiff."

The plaintiff filed a demurrer to this second paragraph on the ground that it did not state facts sufficient to constitute a defense to the action and because, "if the facts alleged in the petition are a public wrong, as alleged in paragraph two of the answer, defendant has not the legal capacity to redress or set the same aside, and because plaintiff is a common carrier is not an issue in the case and constitutes no defense to the action."

The demurrer was overruled, over the objection and exception of plaintiff, who declined to plead further to that paragraph. The case coming on for trial, the court, after hearing the evidence, made a finding of facts, substantially as follows: "That the tract of land in question is a tract of about five acres, lying between the Gasconade river, and the right of way and depot grounds of the St. Louis and San Francisco Railroad Company, at the station of Jerome, a station and shipping point of the said St. Louis and San Francisco Railroad:" that this land was donated to the South Pacific Railroad Company in 1869; that the right of the South Pacific Railroad Company to the land passed with all the other property and franchises of that company, to the St. Louis and San Francisco Railroad Company, by mesne conveyance, and that the St. Louis and San Francisco Railroad Company is now "operating a railroad at said point."

"That at said point there has, for many years, been done a large business in floating ties down the said river, and landing them upon a gravel bar located on said tract, and from thence transmitting them across and over the said track to the side track and depot grounds at said station of Jerome, to be there loaded upon the cars of said railroad company.

"That at the station where the said railroad crosses the river, there is no suitable and convenient place to land ties from the river for loading upon the cars of said railroad; that the effect of the lease read in evidence, made by the St. Louis and San Francisco Railroad Company to plaintiff, which covers the tract of land, would be to give the plaintiff company great advantages over other persons in landing ties from said river, and loading them at the station, and would practically prohibit all other persons from engaging at such business at said point.

"That the land was donated to the South Pacific Railroad Company and acquired by it for public use,

in operating their railroad at that point, and has been so held by its successors.

"That the lease read in evidence dated May 24, 1907, from the St. Louis and San Francisco Railroad Company to plaintiff shows upon its face that the said land is only to be used for the purpose of receiving, storing, and delivering of ties thereon, and 'to facilitate the convenient operation of the railroad at said point;' the terms of said lease being tantamount to a declaration by the said railroad company that the said ground was held by it for the purpose of facilitating the business of receiving and shipping ties at said station."

The court thereupon gave the following declarations of law:

"The court declares the law to be, that when a railroad company chartered under the laws of this State acquires real estate, adjacent to its right of way, and depot grounds, for the purpose of facilitating the operation of said railroad, at such point, in the loading, and storing of any particular commodity, and dedicates the same to such use and where said real estate is the only place where such loading and storing can be reasonably and conveniently done; and where the granting of the exclusive use to the same to any particular person or corporation, would give to the grantee great advantages over other persons, desiring to engage in the same business, and which would practically prohibit others from engaging in such business, at said point, then a grant thereof by the said railroad company to the exclusive use of any particular person or corporation, would be void, against public policy.

"A railroad company may lease a portion of its right of way, depot grounds, and lands adjacent thereto to persons for building elevators, storage houses, or for storing commodities for shipment, but it cannot lease to one person or corporation, all of its ground suitable for such purpose, and thereby prevent

others from engaging in the same occupation, at said point."

Whereupon the court entered judgment for respondent, dissolving the temporary injunction granted by the probate judge, and dismissed appellant's bill, from which action the appellant has taken its appeal to this court, exceptions being duly saved to all these rulings.

At the trial of the case before the court, it appeared by the evidence in the case that in the year 1868, Harrison and others conveyed to one P. Smith Williams certain lands in the northeast fractional quarter of section 23, "north of the Gasconade river and that portion of the north half of section 24 lying north and west of the Gasconade river," in township 37, range 10, west, in Phelps county, and containing two hundred acres. In 1869 Williams and wife, by their deed "granted, donated, bargained and sold and by these presents do grant, bargain and sell" 16.75 acres of this two hundred acres to the South Pacific Railroad Company, for the consideration of one dollar in hand paid. These 16.75 acres are described as "the part of the north half of section 24, in township 37, range 10 west, beginning at the southwest corner of block 48, in the town of Jerome, running thence south one thousand feet, thence east seven hundred feet to the west bank of the Gasconade river, thence along the west bank of the river to the north line of section 24, in township 37, range 10, thence west on said section line 825 feet to the place of beginning." We will hereafter refer to these 16.75 acres as "the Williams tract." Afterwards the South Pacific Railroad Company conveyed all of its lands and other property to the Atlantic & Pacific Railroad Company and the latter company, in 1891, by deed of quitclaim, conveyed all of its lands, town lots and property, situate in certain counties in Missouri named, among them Phelps county, to the St. Louis & San Francisco Railroad Company. On the ninth day of April, 1900,

a contract was entered into between the St. Louis & San Francisco Railroad Company and the J. L. Lee Tie & Timber Company, in which it is set out that the Railroad Company had on that date "licensed unto J. L. Lee Tie & Timber Company, of Springfield, Greene county, Missouri, party of the second part, the following described property, to-wit: commencing at a point on the west bank of the Gasconade river, at Jerome, Phelps county, Missouri, one hundred feet perpendicularly distant in a northeasterly direction from the center line of the St. Louis & San Francisco Railroad; thence westerly and northerly on a curved line parallel to and one hundred feet from said center line, to the north line of section 24, township 37, range 10 west; thence east on said north line of said section 24, to the west bank of the said Gasconade river; thence south meandering the west bank of the said Gasconade river to the place of beginning." It will be noticed that this is the same tract described in the petition and which we have designated as "the river tract." This license or lease was for a term of five years from the ninth day of April, 1900, and was in consideration of the sum of $5, "payable in advance," and in further consideration of compliance with certain covenants and conditions contained in the contract on the part of the tie and timber company. The conditions in substance are, first: The premises "shall be used by said party of the second part solely and for the purpose of loading and unloading ties and timber;" second, a release on the part of the tie and timber company in favor of the railroad company from liability or damage by reason of destruction of the buildings, or of the fixtures, appurtenances or any personal property on the premises by fire, originated or occasioned by sparks communicated from locomotives, etc.; third, that the tie and timber company agrees to indemnify the railroad company from payment of any liability or damage by reason of the injury

135 App—29

or destruction of the buildings, etc., occasioned by fire, on the part of the tie and timber company. It is covenanted also that the tie and timber company will not assign the license or underlet the premises without the written consent of the railroad company; that the railroad company shall have the right to terminate the license by giving the licensee sixty days notice of its intention to do so; that at the termination of the license by limitation or notice, the tie and timber company will at once remove from the premises and deliver peaceable possession to the railroad company, and that the tie and timber company will pay all taxes, etc., levied against the property and that it will paint any building it may erect on the premises with box car mineral red paint, within thirty days from the completion of the building. This agreement, as given in evidence, appears to have this heading: "Right of way. License No. 1006; license on right of way at Jerome, S. L. & S. F. C., for loading purposes;" and it is endorsed, "License 1006, J. L. Lee Tie & Timber Co., Jerome." It appears by the testimony in the case that the J. L. Lee Tie & Timber Company consolidated with or was merged into a new corporation called Hobart-Lee Tie Company, which latter company is the plaintiff and appellant in this suit. On the twentieth of February, 1905, the St. Louis & San Francisco Railroad Company and the Hobart-Lee Tie Company, of Springfield, Mo., entered into an agreement in which it is recited that the railroad company "has this twentieth day of February, 1905, licensed unto Hobart-Lee Tie Company, of Springfield, Mo., party of the second part, the following described property," describing the "River tract" as in the petition and in the lease of April 9, 1900, above quoted. It is recited in this agreement of February, 1905, that the railroad company has "licensed" the property to the tie and timber company "for a term of five years from the ninth day of April, 1905, for and in consideration of the sum of $5 per

annum, payable annually in advance, and in further consideration of compliance with the covenants and conditions hereinafter contained on the part of the party of the second part," it being recited in the agreement that "this license is issued upon the following express conditions: First. Said premises shall be used by said party of the second part solely and only for the purpose of loading and unloading ties and timber." The remaining provisions are similar to those in the agreement of April 9, 1900, above recited. This agreement of February 21, 1905, appears to have been marked in this way:

"(Duplicate) RIGHT OF WAY.
"Formerly in the name of J. L. Lee Tie and Timber Company.
"(Renewal) License No. 1006; license on right of way at Jerome, Hobart-Lee Tie Company, for loading purposes."

On the twenty-fourth of May, 1907, an agreement was entered into between the St. Louis & San Francisco Railroad Company and the Hobart-Lee Tie Company, which is headed, "Right of way License No. 3094," and recites that the railroad company has "licensed unto Hobart-Lee Tie Company, of Springfield, Mo.," three certain parcels of land described, which are the same as parcels Nos. 1, 2 and 3, described in the amended petition. These three parcels appear to be on the right of way of the railroad company, adjoining and around its station at Jerome, and, as before noted, it appears from the testimony in the case that they are detached parcels, not connected together, and all three of them appear to be on the west side of the railroad tracks, while the river tract, described in the agreement of April, 1900, and that of the twentieth of February, 1905, is to the north and east of the railroad. It is in evidence that the 16.75 acres, which were deeded to the South Pacific Railroad Company by Williams, in

1869, and of which 16.75 acres this five acres are a part, is the tract through which the line of the railroad is constructed. The railroad crosses the Gasconade river about 280 feet from the southeast corner of the 16.75 acres or Williams tract by means of a bridge, the western abutments of which, and a considerable part of the track, after it crosses the Gasconade, being upon this Williams tract and, as will be seen by the description of the five-acre tract, or the river land as we have called it, is one hundred feet in a perpendicular line to the center of the railroad track, northeast of that track, so that the point where the railroad crosses the river is one hundred feet southwest of the southwest corner of the river tract and from that point the railroad swings west and north in a curved line through nearly the center of the Williams tract to the north line of section 24. The south end of parcel 3, which is the southern of the three parcels, appears to be about 325 feet north and about 123 feet west of northwest corner of the river tract—that is about 350 feet from it. From the plat in evidence, exhibit "C," it appears that about sixty feet of the bridge pier and track extend about sixty feet over the east boundary of the 16.75 acres, the Williams tract. It does not clearly appear from the evidence whether this 16.75 acres were conveyed by Williams to the South Pacific Railroad Company before or after the road was constructed through it. The testimony, however, of witnesses, whose knowledge runs back to a period of thirty or thirty-five years, seems to show that the railroad has occupied its present position and crossed the Gasconade river on to this land all the time that any of them had known it. In the brief of counsel for appellant it is stated and argued that the Frisco Railroad Company and its grantors "have been in possession of the land below the bridge under color of title for more than thirty-five years. And in actual possession, for rails laid upon the road-bed and fastened there so that engines and cars can

pass over them become annexed to the land and cease to be personal property." When counsel is referring to the land below the bridge, he is referring to the "River Tract" in controversy, as the Gasconade river, running almost due north past it, is bridged by the railroad directly south of the southeast corner of the five-acre tract and, as we have seen, about 280 feet northeast of the southeast corner of the Williams tract. There are about 224 feet of river front of the Williams tract south and outside of the five-acre or river tract. Testimony was introduced showing that a sand or gravel bank had formed in the river to the east of this five-acre tract leased to the appellant, varying from seventy-five to over two hundred feet in width. Some witnesses claimed that it was wider, and that it extended down the river practically the whole length of this five-acre tract. It appears from the evidence in the case that when ties or logs are floated down the Big Piney and the Gasconade for loading on cars at Jerome, that the rafts were tied up to the bank when the water was high, or when it was low and this bar was exposed, to the outer edge of the bar and were taken from there by teams across this river tract and thence over the main and side and loading tracks of the railroad to the station at Jerome, where they were piled up to await cars for loading. The main contention in the case, on the part of plaintiff and appellant, is that by virtue of the license or lease from the railroad company, it has an exclusive right to the use of this river tract as a landing place for its rafts of ties and timber and the exclusive right to haul its ties from the landing at the river across this river tract, and thence across the right of way proper to the three parcels, and there unload and stack them, awaiting loading on the cars, and the endeavor is to exclude defendant from all use of the river tract and these three parcels. On the other hand it is contended on the part of the respondent (defendant below) that this river tract

is a part of the right of way of the railroad company and that he has an equal right to fasten his rafts opposite this tract and load his teams with the ties brought down in rafts, and then cross this river tract to a convenient loading place at the station and there stack them. The evidence is both ways and not very clear as to what actual interference, one with the other, has taken place, in this matter of the loading of ties at the station, nor does it very clearly appear as to what actual interference has taken place at the river landing. As a matter of course, two rafts cannot occupy the same place at the landing at the same time if the rafts are longer than the river front, unless one is outside of the other, and it seems to be in evidence that rafts are usually about fifteen hundred feet long. So that two rafts of that length could hardly be accommodated at the same time at a strip only a little more than six hundred feet in length along the river. There is also evidence to the effect that by going further down the river and landing in front of property owned by others than the railroad company there would not be much trouble in taking ties from the river over to the railroad station. There is evidence to the effect that what might be called the river bank proper is from three to ten feet higher than the gravel bank in front of the river tract, and it seems that a road has been cut and graded through this bank to reach the higher ground. There is testimony for the respondent that this cut was in point of fact made for what they call "the Rolla and Springfield dirt road," but the testimony as to this being a public road, within the meaning of our statute, is not very clear. It is in evidence, however, that parties desiring to cross the Gasconade river from its east bank, with teams or horses, land at divers places along this tract, that is to say, there is no fixed or determined fording place, but parties crossing the river from the east to the west come out on the west bank at almost any given place on the gravel or sand bar

and then appear to make for what defendant calls this "Rolla and Springfield road," cut through the bank of the river proper, and while this is claimed to be so by the respondent and some of his witnesses, witnesses on the part of the appellant claim that they themselves, within the past two or three years, cut out this road for their own convenience for hauling their ties from plaintiff's rafts to the station at Jerome. The evidence as to the use of the three parcels to the west of the railroad track and around the station at Jerome, leaves considerable field for speculation. The manager of the appellant said his company could use a great deal more space at the landing point than is covered by his company's license, and the respondent and his witnesses complain and testify that the appellant is in the habit of not confining itself to the use of the three parcels along and around the depot which, as before said, do not seem to be contiguous, but piles up its logs so as practically to take up all the intervening space between these various parcels, and there is no satisfactory evidence to show that respondent has in any way interfered with the use by the appellant of any one of these three parcels; in point of fact, the weight of the evidence, as we read it, tends to show that if any one is a trespasser or a monopolist in the use of the lands around the station at Jerome, it is the appellant and not the respondent. In the view we take, however, of this case, the controversy concerning these three parcels is not material. The whole controversy and the point actually in dispute and at issue is whether or not the railroad company had a right to execute the lease or license of May 24, 1907, to the appellant, and whether or not the appellant, under and by virtue of that license or lease, has the right and authority to exclude the defendant from the use of the five-acre tract bordering on the river, here called the river tract, and described in the lease of February 20, 1905, for the purpose of landing and unloading his rafts or ties, and

thence teaming them across this tract to a loading point at the station of the railroad at Jerome. That is the real question in this case and the determination of it depends on the question as to whether or not, by the execution of the lease or license in evidence, the railroad company, has, in effect, given, or attempted to give the appellant, as one shipper, a monopoly, in the handling of ties at this particular point, and by so doing, has deprived the respondent, also a shipper of equal facilities with appellant, in the transportation of freight. The case has been briefed very fully and with that brief counsel have submitted very elaborate printed arguments. We do not agree with the contention of counsel for respondent that the appellant could not maintain an action for trespass without actual possession at the time of the trespass. The very authorities cited by him from our State Reports are against this position and distinctly hold that trespass may be maintained on either actual or constructive possession. There was beyond question not only constructive possession, by virtue of this license, in the appellant, but actual possession by its agents, so that that proposition advanced and so much insisted on by counsel for respondent is not tenable. Many of the points made by counsel for respondent have our support. Thus we agree with him that injunction is a proper remedy where there are acts of repeated and continuous trespass. This contention is well supported by very many cases, among others, Turner v. Stewart, 78 Mo. 480; and State ex rel. Jump v. Louisiana, etc., Gravel Road Co. et al., 116 Mo. App. 175. In the latter case, in which an injunction issued on relation of the county attorney to prevent the recurrence of acts claimed to be a public nuisance, Judge NORTONI says at page 199, that a court of chancery will interfere by injunction "on the ground that it can afford a more complete and adequate remedy than a court of law can furnish, bound and tied down as our courts of law are, to certain forms

of remedies and procedure, which they are not capable
of molding and adapting to the necessities of the par-
ticular case.   This seems to be the controlling principle
recognized by our Supreme Court in Turner v. Stew-
art, 78 Mo. 480,  .  .  .   for it is obvious that it was
one of trespass, and that a remedy at law for damages
existed which brought it within the pale of the statute
noted above (sec. 3649, R. S. 1899).  Notwithstanding
this fact, however, the court proceeded to administer
the relief prayed for in the face of the existing remedy
at law for damages on the theory that such remedy was
not adequate.   The principle recognized clearly was
that the remedy by injunction could give more adequate
and complete relief than could be obtained at law."
See also State ex rel. v. Scott Co., etc., Road Co., 207
Mo. 54, l. c. 70 and 71. We also agree with the learned
and very industrious counsel for appellant that the Gas-
conade river, being the western boundary of this five-
acre tract, as covered by the deed, constituted the rail-
road company a riparian owner and as such, under the
law of our State, as construed by our courts, owns to
the waters' edge at low-water mark, and that as such
riparian owner it has the right of access to the navi-
gable part of the river in front of its premises and to
the use of waters for all purposes not inconsistent with
the public right of navigation therein.   It is true also,
as claimed by that counsel, that riparian right is the
result of that full dominion which every one has over
his own land by which he is authorized to keep all
others from coming upon it, except upon his own terms.
It is true also, as a general proposition, as claimed by
that counsel that a railroad company has a right to con-
vey its surplus land, that is land not essential to enable
it to perform its duties, to substantially the same ex-
tent that a private business corporation has.  It is also
true, as a general proposition, that  a quasi-public cor-
poration may dispose of or incumber its property but,
as said by counsel himself and as sustained by the

authorities to which he refers (1 Clark & Marshall, Private Corporations; 2 Purdy's Beach on Private Corporations) a quasi-public corporation, as well as a private business corporation, has general power to convey or dispose of or incumber it, but this power is coupled with the provision that in conveying or disposing of it it has the right so to do "for any legitimate purpose." This latter qualification is the *crux* of the case; that is to say, was this lease or license "for a legitimate purpose," when confessedly its effect and presumably its intent was to exclude any one but the licensee from the use of this particular tract? We can come to no conclusion, from a careful reading and consideration of all the testimony in the case, other than that the lease or license from the railroad company to the appellant conferred upon appellant an undue advantage as a shipper over the defendant, who was also a shipper of the same kind of freight at this same point, and effected a "discrimination . . . in facilities in the transportation of freight . . . between commission merchants or other persons engaged in the transportation of freight, in favor of (appellant) by abatement, drawback or otherwise," contrary to section 1127, Revised Statutes 1899. It is very clear to us, from the testimony in the case, that from the time that it was first acquired down to the present, this particular "river tract" of five acres, as well as all of the remainder of the 16.75 acres acquired from Williams, was held and treated by the railroad company as part of its right of way; possibly it would be more accurate to say that it was treated as part of its depot grounds; the whole tract of 16.75 acres was donated to the railroad company evidently for use as a railroad, and when the railroad company attempted to give the exclusive right of landing in front of what was practically part of its right of way, and of hauling over this tract to its station and loading point on its line of road, to one customer to the exclusion and serious disadvantage of an-

other, we are of the opinion that it thereby unfairly and unjustly discriminated against the latter within the meaning of the section of the statute referred to. Even if it were true that this particular form of preference is not within the letter of our laws concerning railroads, the spirit of these laws is all in support of the rule that all shippers shall have equal facilities in the transportation of freight over the railroads of this State. In the case of Cravens v. Rodgers, 101 Mo. 247, it is said, in passing on the right of a railroad company to give the owners of hack line facilities for loading and unloading passengers, which placed all competitors in like business at a great disadvantage, that "monopolies are obnoxious to the spirit of our laws, and ought to be discouraged. This is the spirit of our constitutional provision which prohibts 'discrimination in charges, or facilities in transportation . . . between transportation companies and individuals or in favor of either.' [Article 12, sec. 23.] And in this case we do not think the railroad company could give the plaintiffs the exclusive privilege of approach to nearly one-half of its platform, and that the most desirable and advantageous half for procuring passengers, and thereby deny it to the defendants, both being there for the same purpose and in the same business of forwarding the railroad's passengers to their places of destination from the point where the railroad company landed them." It is true that the section of the Constitution referred to in the above opinion covers transactions between carriers, but it is also true that section 1127 of our statutes, while repeating this constitutional provision, that no railway company, corporation or association "shall hereafter make any discrimination in charges or facilities in the transportation of freight or passengers between transportation companies and individuals," goes further and includes a prohibition of discrimination or unequal facilities in the transportation of freight "between commisson merchants or other persons engaged in the

transportation of freight and individuals in favor of either by abatement, drawback or otherwise." It seems to us that this statutory provision covers this case, as we are satisfied that the effect of the lease or license was to confer a decided and very great advantage to one shipper, the appellant here, over its competitor, the respondent. Both were engaged in the same line of business, floating ties from the Big Piney and Gasconade to this point on the Gasconade, for the purpose of having them transported by the St. Louis & San Francisco Railroad Company from the same station on the railroad to their destination, and for the railroad company to attempt to say to one shipper, "you may land your rafts at a certain part of our grounds and haul them from the river and across those grounds to our station and there load them," and to say to another intended shipper, "you cannot do this, but must go above or below onto private property and there pay the tolls that may be exacted of you for the privilege of reaching, by a roundabout way, our loading switch," is, to our minds, a clear case of discrimination in favor of one and against the other and is a plain case of affording superior facilities for the transportation of freight to one shipper as against another, each of them then engaged in identically the same business. While we are of course not bound by the finding of the lower court we, in this case agree with it in so far as we have here quoted it. The declarations of law given by the trial judge correctly state the law as applicable to the facts in the case, the decree was for the right party on all the evidence, and it is affirmed. All concur.