SKAGGS et al. v. KANSAS CITY TERMINAL RY. CO. et al.

(District Court, W. D. Missouri, W. D. May 12, 1916.)

No. 66.

1. COURTS ☞361—RULES OF DECISION—STATE LAWS.

Congress having undertaken by the Anti-Trust Acts (Act Feb. 4, 1887, c. 104, § 3, 24 Stat. 380 [Comp. St. 1913, § 8565]; Act July 2, 1890, c. 647, 26 Stat. 209; Act Oct. 15, 1914, c. 323, 38 Stat. 730), to deal with monopolies affecting interstate commerce, and having conferred jurisdiction of questions arising thereunder on the federal courts, in determining such questions those courts exercise an independent judgment, unaffected by the decisions of the courts of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 954; Dec. Dig. ☞361.]

2. CARRIERS ☞14—REGULATIONS AT STATIONS—HACKMEN AND BAGGAGE CARRIERS.

Under the rule of the federal courts, a railroad and depot company may lawfully exclude some hackmen or carriers of baggage from entering its grounds or station for the purpose of soliciting patronage and plying their vocation, while it gives to others the exclusive privilege of doing so.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 29; Dec. Dig. ☞14.]

3. COURTS ☞366(1)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

It is only the highest court of a state whose decisions construing the state constitution or statutes are binding on the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957, 967; Dec. Dig. ☞366(1).]

In Equity. Suit by Joseph Skaggs and others against the Kansas City Terminal Railway Company, the Shaw Transfer Company, and others. On defendants' motion to dissolve injunction, and for temporary injunction on cross-bill. Motions granted.

Russell Garnett, of Kansas City, Mo., for plaintiffs.

Samuel W. Sawyer and R. J. Ingraham, both of Kansas City, Mo. (Lathrop, Morrow, Fox & Moore, of Kansas City, Mo., of counsel), for defendants.

VAN VALKENBURGH, District Judge. The plaintiff, Joseph Skaggs, for himself and such other persons as are jointly interested and may join in seeking the same relief, filed this bill in the circuit

court of Jackson county, Mo., against the Kansas City Terminal Railway Company, the Shaw Transfer Company, both Missouri corporations, and Hiram W. Hammil, chief of police of Kansas City, Mo., to restrain the defendants from depriving the plaintiff or plaintiffs of the use of the Union Station Plaza, adjacent to said Union Station, by forcing them to remove their hacks therefrom while waiting for passengers, and from interfering with plaintiffs in any way while thereon; also praying that plaintiffs be allowed free access to and use of said premises in the employment of their business as hack drivers and collectors of passengers. A temporary restraining order was granted, and plaintiffs dismissed as to defendant Hammil. Thereafter an amended bill was filed, charging that the defendants Terminal Company and Transfer Company had entered into an unlawful conspiracy and agreement for the purpose of fixing prices and monopolizing and controlling the transfer and baggage business to and from the new Union Station in Kansas City, Mo., as evidenced by a certain contract set out in full, whereby the Terminal Company granted the Transfer Company the exclusive privilege of soliciting patronage for its cabs, carriages, and baggage service upon the grounds and premises of the Terminal Company at said Union Station. In said contract the carriage provided for was between said Union Station and any part of Kansas City, Mo., or Kansas City, Kan. Upon the filing of the amended bill, containing allegations of an unlawful contract, conspiracy, and agreement in restraint of trade, and for the creation of a monopoly affecting commerce, both interstate and intrastate, the defendant Terminal Company seasonably filed its petition and bond for removal. The case was transferred to this court, the restraining order being retained in force. In this court the defendant Terminal Company has filed answer and cross-bill, praying affirmative relief by injunction on its behalf. The plaintiffs filed a motion to remand, but later joined in the hearing upon this motion, and thereafter filed reply to defendant Terminal Company's answer, and an answer to said defendant's cross-bill.

[1] The primary question, of course, is as to the jurisdiction of this court. Plaintiffs at the hearing practically abandoned the motion to remand and no question of jurisdiction is urged in the briefs of counsel. Pleadings have been filed amounting to an acceptance of this forum, but, inasmuch as diversity of citizenship is not present, such implied consent would be inoperative unless jurisdiction is otherwise affirmatively disclosed. However, the allegations of the petition clearly and sufficiently bring the case within the acts of Congress. Act Feb. 4, 1887, c. 104, § 3, 24 Stat. 380 (Comp. St. 1913, § 8565); Act July 2, 1890, c. 647, 26 Stat. 209; Act Oct. 15, 1914, c. 323, 38 Stat. 730. Congress has, therefore, entered and appropriated this field.

[2] Under such conditions, the rule in federal jurisdictions is controlling; and that rule is the later and better reasoned doctrine and is supported by the undoubted weight of authority. A railroad and depot company may lawfully exclude some hackmen or carriers of baggage from entering its grounds or station for the purpose of soliciting patronage and plying their vocation, while it gives to others the exclusive privilege of doing so. Donovan v. Pennsylvania Company, 199 U. S.

279, 26 Sup. Ct. 91, 50 L. Ed. 192; Depot Carriage & Baggage Co. v. Kansas City Terminal Ry. Co. (C. C.) 190 Fed. 212; Oregon Short Line R. R. Co. v. F. T. Davidson et al., 33 Utah, 370, 94 Pac. 10, 16 L. R. A. (N. S.) 777, and note, 14 Ann. Cas. 489. The latter case is selected for citation because of its exhaustive and convincing reasoning, and of the complete presentation of doctrine and authorities in the attendant footnote.

Plaintiffs rely upon the contention that the contrary doctrine prevails in this state, and that this case should be governed by the law of the jurisdiction in which the station is situated. The decision in Donovan v. Pennsylvania Co., supra, seems, on first impression, to be conditioned upon the absence of valid state legislation to the contrary; but such is really not the case as applied to the doctrine generally. In that case, so far as appears from the record, the federal jurisdiction was founded solely upon diversity of citizenship, and so the existence or nonexistence of local prohibitions became pertinent and was discussed; but such considerations lose their force in a case in which Congress, by entering the field, has drawn to the courts of the United States paramount jurisdiction and authority. The subject is then one of general law, in respect of which the courts of the United States are entitled to exercise their independent judgment in light of the settled principles that must always control the determination of the legal rights of parties. Donovan v. Pennsylvania Co., supra, 199 U. S. loc. cit. 300, 26 Sup. Ct. 91, 50 L. Ed. 192. The rule announced by the Supreme Court of the United States must be determinative of the present controversy.

But, even though it were to be conceded that the local law controls, nevertheless, after careful examination, I am of opinion that the decisions of the highest courts of this state do not sustain plaintiffs' position. Reliance is placed upon section 23 of article 12 of the Missouri Constitution, to wit:

"*Discrimination Between Companies and Individuals.*—No discrimination in charges or facilities in transportation shall be made between transportation companies and individuals, or in favor of either, by abatement, drawback or otherwise; and no railroad company, or any lessee, manager or employé thereof, shall make any preference in furnishing cars or motive power."

And upon sections 3174 and 3184, R. S. Mo. 1909, which read as follows:

"Sec. 3174. *Railways Declared Public Highways, and Companies Common Carriers — Discrimination Prohibited — Penalty.* — Railways heretofore constructed, or that may hereafter be constructed in this state, are hereby declared public highways, and railroad companies common carriers. No railway company, corporation or association shall hereafter make any discrimination in charges or facilities in the transportation of freight or passengers between transportation companies and individuals, nor in the transportation of freight between commission merchants or other persons engaged in the transportation of freight and individuals, in favor of either, by abatement, drawback or otherwise, nor shall any such company, corporation or association, nor any lessee, manager or employé of any such company, corporation or association make any preference between the parties aforesaid in furnishing cars or motive power, for the purpose aforesaid. Any company, corporation or association, or manager, lessee or employé, violating the provisions of this section shall forfeit and pay to the party injured the whole amount of

such transportation charged, to be recovered before any court of competent jurisdiction: Provided, that excursion or commutation tickets may be issued at special rates. (R. S. 1899, § 1127.)"

"Sec. 3184. *Discrimination Between Persons or Localities Prohibited.*—It shall be unlawful for any such common carrier to make or give any undue or unreasonable preference or advantage to any particular person, company or firm, corporation or locality, in the transportation of goods, wares and merchandise of any character, or to subject any particular person, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage with respect to such transportation; and all such common carriers shall afford equal facilities for the interchange of traffic between their respective lines, and for receiving, forwarding and switching cars and delivering property to and from their lines, and to and from other lines and places connected therewith, and shall not discriminate in their accommodation, rates or charges between such connecting lines and places. But this provision shall not be construed as requiring such common carriers to give the use of their tracks or terminal facilities to other common carriers engaged in a similar business. (R. S. 1899, § 1133.)"

Counsel cite the following Missouri cases in support of their contention: Cravens v. Rodgers, 101 Mo. 247, 14 S. W. 106; Christie v. Missouri Pac. Ry. Co., 94 Mo. 453, 7 S. W. 567; Home Telephone Co. v. Neosho Telephone Co., 147 Mo. App. loc. cit. 237, 126 S. W. 773; Tie Company v. Stone, 135 Mo. App. 438, 117 S. W. 604.

It seems obvious that the sections of Constitution and statutes quoted apply only to those doing business with carriers in connection with railroad transportation; that is to say, patrons or would-be patrons who sustain a contractual relation with them. Hack drivers generally stand in no such a relation to the defendant Terminal Company. It is true that in Cravens v. Rodgers, 101 Mo. 247, 14 S. W. 106, the Supreme Court of Missouri, in a case between two transfer lines to which the railroad company was not a party, held, in effect, that such an exclusive privilege cannot be given, as against public policy and the spirit of the state Constitution (article 12, section 23, supra); but the Supreme Court of Missouri did not undertake in that case to construe this article of the Constitution. It said that such an agreement was against its spirit, not its terms; and it based its ruling upon its conception of public policy and general law. In such cases, as we have seen, local decisions are not controlling. Donovan v. Pennsylvania Co., supra. It should further be remarked that sections 3174 and 3184 were upon the statute book when Cravens v. Rodgers was decided, and no mention is made of these sections as affecting the subject now under discussion.

[3] I do not find that these sections have been held applicable to a state of facts such as is here presented. But if decisions of the state Courts of Appeals are so viewed, we are reminded that, while entitled to respectful consideration, they are not the decisions of the highest judicial tribunal of the state, which alone are binding on the federal courts in their construction of local statutes. Federal Lead Company v. Swyers, 161 Fed. 687, 88 C. C. A. 547.

However, it may be profitable to make brief examination of such cases cited. In Tie Company v. Stone, 135 Mo. App. 438, 117 S. W. 604, the court limits its ruling to railroad transportation affecting patrons of the carrier in this respect, which is in agreement with the

views herein expressed. In Telephone Company v. Telephone Company, 147 Mo. App. 216, 126 S. W. 773, the majority opinion, while indirectly supporting the general contention of plaintiffs, does not attempt to construe the sections of statute under discussion. The dissenting opinion, however, is in full accord with the doctrine announced by this court. In Home Telephone Company v. Sarcoxie Telephone Co., 236 Mo. 114, 139 S. W. 108, 36 L. R. A. (N. S.) 124, the Supreme Court reverses the ruling of the Court of Appeals just referred to, and expressly declares the dissenting opinion of Judge Reynolds to be the law of the case. Judge Graves refers to section.3106 of the railroad act (R. S. Mo. 1909), which reads:

"All railroad corporations may contract with each other, or with other corporations, in any manner not inconsistent with the scope, object and purpose of their creation and management"

—and cites with approval Wiggins Ferry Co. v. Railroad Company, 73 Mo. 389, 39 Am. Rep. 519; Id., 128 Mo. 224, 27 S. W. 568, 30 S. W. 430, in which it was held to be proper for a railway company to enter into a contract with a single ferry company to handle its trade, and further that such contract is not viewed as violative of public policy, nor as being a contract in restraint of trade or creating a monopoly. These rulings supersede the Missouri cases cited by counsel for plaintiffs, in so far as the same may seem to be in conflict with the doctrine here announced. In any aspect, therefore, the matter is thus left for the independent judgment of this court, which must be governed by considerations of general law and by the pronouncements of federal courts of last resort.

It should be added that by stipulation, as well as by the proofs, the property of the Terminal Company is to be deemed in every legal sense private property as between it and those of the general public who have no occasion to use it for purposes of transportation. The right of the company to the exclusive use and enjoyment thereof is as perfect and absolute as that of an owner of real property not burdened with public or private easements or servitudes. Furthermore, the rights of the public are not impaired by the grant by a railroad company of the exclusive privilege to solicit patronage for hacks and baggage transferring within its depot grounds, where the recipient of the privilege and the facilities furnished are subject to legislative regulation. Oregon Short Line R. R. Co. v. Davidson et al., 33 Utah, 370, 94 Pac. 10, 16 L. R. A. (N. S.) 777, 14 Ann. Cas. 489. It is conceded in the present case that the transfer companies' rates and fares are subject to such regulation.

It appears convincingly that the limitation of the station transfer privileges to a single responsible party is in no sense unreasonable. While the matter of revenue is concededly involved, nevertheless the station company is no doubt actuated by experience thus to eliminate, to great extent, the possibility of abuses which are known to have been present in the past at the old station. Adequate provision is made in the contract for all the needs of the traveling public in this regard. Manifestly, out-going passengers are in no wise affected, because plaintiffs and others have the conceded right to enter upon the premises of

the Terminal Company for the purpose of actual delivery of passengers and baggage. They also have the right to receive passengers and baggage for whose transportation they shall have already received orders. The freedom of all parties to take their stands upon appropriate public places outside the limits of the premises of defendant Terminal Company affords to the public generally, including all in-coming passengers, every opportunity to avail itself of their services, should it so desire. The new Union Station has been built with a view to affording every convenience and comfort to travelers. The interests of the public demand that the Terminal Company should be given every opportunity to keep its approaches cleanly and attractive. The presence of horses in considerable numbers near its principal entrance, and in close proximity to the very high class restaurant maintained, detracts much from the comfort of patrons. No doubt the plaintiffs and those similarly situated make effort to render their stands as unobjectionable as possible, but common experience teaches that such efforts cannot be wholly successful. However, this case is decided upon the property rights involved independently of such considerations.

It follows that the restraining order heretofore granted against defendants should be dissolved, and the temporary injunction, restraining plaintiffs, and every other person or corporation similarly situated who has become party or privy to this proceeding, their agents, servants, and employés under their authority and control, from standing their horses, teams, and vehicles of every kind or description upon the Union Station Plaza, and from soliciting the custom and patronage of passengers or other persons upon the Union Station Plaza, or premises of defendant and cross-complainant Terminal Company, should be granted. An order may be prepared in conformity with the views herein expressed.

---

⬚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes