# Lehigh Valley Railroad Company v. Graham, Appellant.

*Railroads—Contracts—Hack service for passengers—Trespass—Equity—Parties.*

Where a railroad company has made an arrangement with a transfer company, or hackman, to furnish at its passenger station, from time to time, all vehicles necessary for the accommodation of passengers arriving there on its trains, it may legally exclude from the depot grounds or passenger station all other hackmen or expressmen coming to either for the purpose only of soliciting for themselves the custom or patronage of passengers.

In such a case if the railroad files a bill in equity against the competing hackman, it need not join in the bill as a necessary party plaintiff, the person with whom it has made the contract for the hack service.

Argued Nov. 17, 1915. Appeal, No. 242, Oct. T., 1915, by defendant, from decree of C. P. Bradford Co.; Sept. T., 1915, No. 2, on bill in equity in case of Lehigh Valley Railroad Company v. James F. Graham. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Bill in equity for an injunction.

MAXWELL, P. J., filed the following opinion:

The Lehigh Valley Railroad Company has its main passenger station at the extreme upper end of Towanda Borough: At which station all passengers and baggage upon incoming through trains, on its main line, are received and discharged. Also, the complainant has a branch line, known as the Bowmans Creek Branch, which commences at Towanda, and passes through Sullivan County, to Wilkes-Barre, Pa. This branch receives and discharges passengers principally at another station, called "Washington Street Station," except the through passengers. Those are received at the upper or main station, which is the junction of the Bowmans Creek Branch, with the main line.

The Williamsport and North Branch Railroad, which operates a line from Towanda to Williamsport, Pa., ......runs over the Lehigh Valley tracks from the lower station in Towanda to the upper station in Towanda, receives and discharges its passengers principally at the Lehigh Valley stations, known as Washington street station, and the lower station. The Susquehanna and New York Railroad Company operates a single track road from Williamsport to Towanda, and comes in over the Lehigh Valley Railroad tracks, at or near the lower station in Towanda, and receives and discharges passengers at the lower station, and also at Washington street

station, and may receive and discharge some passengers at the upper station.

In other words, the Lehigh Valley has three passenger stations in Towanda. The principal station is known as the upper station and is situated at the extreme northern end of the borough; another station, known as Washington street station, is located in the first ward of the borough, and close to the business section, and also a station in the extreme south end of the borough. The complainants also have another station, on the opposite side of the north branch of the Susquehanna river from the Borough of Towanda, situate in Wysox Township, Pa., which is reached from the borough by passing over the wagon bridge, which spans the north branch of the Susquehanna river. At which station the local trains on the main line receive and discharge passengers, and also at the upper station.

It appears that on the 27th day of December, 1907, the following contract or agreement was entered into between the Lehigh Valley Railroad Company, of the first part, and Daniel Kirwan, of Towanda, trading as Kirwan Transfer Company, of the second part, as follows, to wit:

This agreement, made this 27th day of December, A. D. one thousand nine hundred and seven (1907) between the Lehigh Valley Railroad Company of the first part and Daniel Kirwan, trading as the Kirwan Transfer Company, of the second part,

### WITNESSETH:

First. The party of the first part hereby permits and licenses the party of the second part to transport passengers and baggage from and to the trains of the party of the first part at its station at Towanda, State of Pennsylvania, and by a suitable agent or agents to solicit orders for such transportation at such station and upon the trains of the party of the first part. The drivers of

the vehicles of the party of the second part shall stand by their vehicles on the platform in space designated at the station by the party of the first part and shall not come beyond their designated space and solicit business.; and if this provision and the regulations generally of the party of the first part are not observed the said drivers or any of them may be summarily removed from the station and its adjacent premises. The privileges aforesaid shall be exercised under the general regulations and directions of the party of the first part, and shall, except as hereinafter provided, be exclusively in the party of the second part so far as the party of the first part may lawfully grant such exclusive privileges. It being understood and agreed that nothing herein contained shall in any way interfere with the privileges now enjoyed by the transfer lines operated by the Park Hotel and the Ward House between said station and their respective hotels.

Second. In consideration of the privileges given as aforesaid the party of the second part agrees to pay to the party of the first part the sum of fifty dollars ($50) per annum, to be paid upon the execution of this agreement and a like amount to be paid thereafter in advance on the 27th day of December in each year during the continuance of this agreement. The party of the second part further agrees that he will furnish and keep in service at his own cost for the transportation of passengers and baggage from and to the trains of the party of the first part at said station at Towanda, sufficient carriages, cabs, omnibusses, wagons, sleighs, or other suitable vehicles to afford first class transfer service for said passengers and baggage. The vehicles aforesaid shall be kept at all times in good condition and subject to the approval and direction of the party of the first part, and prompt and efficient service shall be rendered. The rates for transportation shall be reasonable and shall be subject to the approval of the party of the first part. The party of the second part shall furnish at his own cost

competent drivers and all other necessary employees in and about the service aforesaid, which employees while on duty shall wear a distinctive uniform or badge approved by the party of the first part.

Third. The party of the second part will be responsible and will make compensation for all injury and damage done by his horses, vehicles or employees to the property of the party of the first part, or to the public, and will at all times indemnify and save harmless the party of the first part from and against any and all suits, claims, demands, loss damage and expenses, which may be brought against it or which it may bear, suffer, sustain or be put unto by reason of any matter or thing arising out of the exercise of the privileges hereby conferred or of anything connected therewith or appertaining thereto, and hereby releases the party of the first part from any and all claims for damages to the property or employees of the party of the second part whether caused by the negligence of the party of the first part, its officers, agents or employees, or otherwise howsoever.

Fourth. This agreement shall continue in effect for one year from the 27th day of December, 1907, and if not then terminated by thirty days' notice given by either party to the other prior to the expiration of the said period of one year, shall continue in effect from year to year until terminated by thirty days' notice given by either party to the other prior to the expiration of any year; provided, however, that the party of the first part reserves the right in case of breach of any covenant hereof by the party of the second part to terminate this agreement at any time by giving ten days' notice of intention so to do.

It appears that Daniel Kirwan, trading as Kirwan Transfer Company, is now, and has been for some years, engaged in the livery and hack business in Towanda Borough.

It further appears, that since the execution of the contract of December 27, 1907, Mr. Kirwan has been meet-

ing with his hacks and baggage wagon all incoming trains on the Lehigh Valley Railroad, from the different stations, both during the day and night, and delivers passengers and their baggage from said stations, around through the borough. For which services he has been charging twenty-five cents per passenger through the greater part of the borough, but from the extreme hill, on the west, in the borough he charged fifty cents per passenger, and when he conveyed a passenger from the upper station, in Towanda, across the bridge, in Wysox Township, then he charged from fifty cents to one dollar per passenger, depending on the location. He has also delivered and received the baggage belonging to patrons of the road, from the different stations.

The complainant proved that Mr. Kirwan paid the consideration mentioned in said contract, on the 27th of December, 1914, and renewed the contract for one year, from December 27, 1914, to December 27, 1915.

It appears that the upper passenger station of the Lehigh Valley Railroad Company is one and one-fourth miles from the business part of the borough.

J. F. Graham, the defendant, began the operation of two motor jitney busses, in the Borough of Towanda, and also to the railroad stations of the complainant, on or about the 18th day of May, 1915. Each bus will accommodate nine passengers, and by crowding, as many as twelve. For which he charges each passenger five cents for conveying them anywhere on the pavement, and ten cents to and from the railroad station, and fifteen cents for driving back on the hill in the borough.

It further appears that Mr. Graham, in the prosecution of his business in running the jitney busses, delivers passengers to the different railroad passenger stations in the borough, and also, he and the men in his employ, remain at the upper Lehigh Valley passenger railroad station, for the arrival of passenger trains, and he and his men go upon the platform of the station and solicit passengers to ride in his busses, and also to deliver their bag-

gage, and sometimes as high as five men are soliciting passengers, to ride in his jitney busses.

It further appears that the said J. F. Graham is conveying the guests from the New Park Hotel in Towanda, to and from the upper station of the Lehigh Valley, under an arrangement with the proprietor of said hotel, George Shores, until this controversy between the Lehigh Valley Railroad Company and Mr. Graham is settled. It appears that Mr. Shores discontinued his hotel bus, from the hotel to the station, as he said people would not ride in the bus any more, and he told Mr. Graham to take all his passengers, until this matter was settled, and Mr. Shores testified that he told Mr. Graham he could occupy the space at the depot that his bus formerly occupied.

It appears that Mr. Kirwan, at or about the same time that the jitney busses were put into service, or possibly the day before, put on a motor bus in addition to his hacks heretofore employed. Mr. Kirwan's new bus will carry about the same number of passengers that one of the other busses will carry.

The complainant, the Lehigh Valley Railroad Company, having by its contract, sold the exclusive privilege of entering its depot grounds, at its upper station, to Daniel Kirwan, trading as Kirwan Transfer Company, for the purpose of soliciting passengers and baggage, asks the court to restrain the said J. F. Graham from entering upon its depot grounds and platform for the purpose of soliciting passengers and baggage from its incoming trains, at said station. They do not object to his conveying passengers and baggage to said station, at any and all times, and they do not object to his coming to said station to receive passengers that he has a contract or previous arrangement to meet them.

The railroad company have notified Mr. Graham to desist from occupying their upper depot grounds and platform in the prosecution of his private business, in getting passengers to take his bus, and Mr. Graham has

refused to desist, and says that he expects to continue at this depot until he is ordered to stop by the court.

This matter comes before the court, upon bill, injunction affidavits and answer of the defendant.

While the complainant in its bill of complaint prays for a preliminary injunction, yet, after considering the matter with counsel representing the defendant and complainant, it was agreed to waive the prayer for temporary injunction, and to hear the whole case upon its merits, without further pleadings, the court to grant or refuse the injunction, as it determines the facts and law to be.

The printing of bill of complaint, injunction affidavits and answer of the defendant, were waived by the parties.

The question for our determination is, has the complainant the right lawfully, to make and enter into a contract with Daniel Kirwan, trading as "Kirwan Transfer Company," such as it made with him on December 27, 1907, and enforce the same?

It is alleged by the defendant, that the giving to Daniel Kirwan, by the railroad company, exclusive privileges of soliciting passengers and baggage at its upper station in Towanda, Pa., and excluding the defendant and his men from going upon its depot grounds and platform, and in its station, for the purpose of soliciting incoming passengers to take defendant's busses, is an unlawful discrimination against the defendant and the traveling public, and therefore, void.

This brings us to the discussion of the principles involved in this case.

We will divide the discussion of the case at bar into the following paragraphs:

(a) Whether the Lehigh Valley Railroad Company, having made an arrangement with Daniel Kirwan Transfer Company to furnish at its main passenger station, at Towanda, Pa., from time to time all vehicles, carriages, cabs, wagons, omnibusses and sleighs, suitable to afford first-class transfer service for passengers and bag-

gage, necessary for the accommodation of passengers arriving there on its trains, may legally exclude from its depot grounds, platform and passenger station, all hackmen or persons coming there for the purpose only of soliciting for themselves the custom or patronage of passengers?

(b) Is such a contract or arrangement, when enforced, an unlawful discrimination against those engaged in the hack and transfer business, other than the Kirwan Transfer Company?

(c) Should the court consider, in this application for an injunction against the defendant, the question of whether the traveling public have been and are properly and adequately served by the said Daniel Kirwan, and if not properly served, refuse the injunction?

(d) Has the complainant an adequate remedy at law?

We will consider paragraphs "a" and "b" together.

There is no necessity of discussing the general functions, duties and privileges of the railroad as a public highway, adopted primarily for the convenience of the people and the relative rights, control and privileges of its business, to and with the public. These matters are too well settled to be open for discussion.

The same principles apply, in reference to the ownership and use of the railroad company's station and depot grounds, as apply to the ordinary construction, equipment, operation and management of its road and line, and other property or appliances employed in the transportation of passengers and freight. Its station and grounds "must be devoted principally to public use to the extent necessary for the public objects intended to be accomplished by the construction and maintenance of the railroad as a highway."

Our attention has not been called to any case in this state, where this precise question has been decided. Yet, this identical question has been so thoroughly discussed and reviewed by the courts of other states, and also by

our Federal courts, that it is only necessary to refer to a very few of them.

We quote from the opinion of the Supreme Court of the United States, in the case of Donovon v. Pennsylvania Railroad Company, 199 U. S. Reports, commencing at the bottom of page 293.

"It by no means follows, however, that the company may not establish such reasonable rules, in respect to the use of its property, as the public convenience and its interests may suggest, provided only that such rules are consistent with the ends for which the corporation was created and not inconsistent with public regulations legally established for the conduct of its business. Although its functions are public in their nature, the company holds the legal title to the property which it has undertaken to employ in the discharge of those functions. And as incident to ownership it may use the property for the purposes of making profit for itself; such use, however, being always subject to the condition that the property must be devoted primarily to public objects, without discrimination among passengers and shippers, and not be so managed as to defeat those objects. It is required, under all circumstances to do what may reasonably be necessary and suitable for the accommodation of passengers and shippers. But it is under no obligation to refrain from using its property to the best advantage of the public and of itself. It is not bound to so use its property that others, having no business with it, may make profit to themselves. Its property is to be deemed, in every legal sense, private property as between it and those of the general public who have no occasion to use it for purposes of transportation.".

The defendant in the case at bar, contends that he is entitled to the same privileges at the main station of complainant, as is accorded by special arrangement, to Kirwan Transfer Company. This contention of defendant cannot be sustained, for the reason that he has no contractual relations with the complainant. The com-

plainant is not bound to so use its property that another, having no business with it, may make profit to themselves."

The defendant and his men are pursuing this business for the purpose of making profit for the defendant. If this defendant has the right to do this, why not fifty others?

The defendant says the railroad company may exclude all persons from using its station and depot grounds, for the purpose of soliciting business, but that it cannot grant this privilege to one, and exclude all others.

The Supreme Court of the United States, in the case of Donovon v. Pennsylvania Company above quoted, disposes of this question against the defendant's contention.

The authorities sustaining the proposition contained in paragraphs "a" and "b," in favor of the contention of the complainant, are so many, and the reasoning of the cases so convincing, that we are compelled and persuaded to follow them.

We quote from what the Supreme Court of Massachusetts said, in the case of Old Colony Railroad Company v. Tripp, 147 Mass. 35, which the Supreme Court of Ohio quoted with approval in the case of State, ex rel., Sheets, Atty. Gen., v. Union Depot Company, 73 Northeastern Reporter 636.

"We have not been referred to any decision or dictum in England or in this country that a common carrier of passengers and their baggage to and from a railroad station has any right without the consent of the railroad company, to use the grounds, buildings and platforms of the station for the purpose of soliciting the patronage of passengers, or that a regulation of the company which allows such use by particular persons and denies it to others violates any right of the latter. Cases at common law or under statutes to determine whether railroad companies in particular instances give equal terms and facilities to different parties to whom they furnished trans-

portation, and with whom they dealt as common carriers, have no bearing on the case at bar.   The defendant, in his business of solicitor of the patronage of passengers, held no relations with the plaintiff as a common carrier, and had no right to use its station grounds and buildings."

The authorities pro and con, are fully reviewed and distinguished by the Supreme Court of Ohio, in the case last cited, and after reviewing the authorities fully, the court reaches the conclusion contended for by the complainant in this case.   We refer to that case and the cases therein cited by the court, together with the case of Donovon v. Pennsylvania Company, above cited, in support of our views and decision in this case.

The complainant, by its bill of complaint, is not attempting in this case to exclude the defendant from conveying passengers and baggage to any, or all of its various stations, neither does the bill of complaint seek to enjoin the defendant from going to any of its stations, to meet any and all incoming trains, for the persons who have previously engaged him for that purpose.

Neither does the bill of complaint seek to enjoin the defendant from the full and reasonable use of its stations and grounds at Washington street, the lower station in the south end of the borough, its local station across the river in East Towanda, for the purpose of taking passengers there, and of soliciting passengers from incoming trains, to ride with him, etc.

The only question involved in the case at bar, is the right of the railroad company to exclude the defendant and his men standing on its ground with jitney busses, backed up to the platform, at its main or upper station, and by signs on its busses, and by men representing the defendant, going upon its platform, and soliciting business from the passengers as they alight from the trains.

As to paragraph (c.).

Should we consider in this case, the question raised by the defendant, whether or not the traveling public

have or have not, up until the time he put in service his two jitney busses, been properly and adequately served by the Kirwan Transfer Company?

As this case stands before us, upon the proof, we find as a fact, that the service rendered by Daniel Kirwan, or Kirwan Transfer Company, up to the time when the jitney busses were put in service by the defendant, was inadequate, deficient and not up to date, and was not such service as the traveling public had a right to expect or receive. We are forced to the conclusion, under the authorities, that this question is immaterial, and should not be considered by the court in determining the rights of the defendant in this case.

This question was considered by the United States Supreme Court, in the case above cited, of Donovon v. Pennsylvania Company, 199 U. S. Reports, at page 279, from which we quote the following:

"The record does not show that the arrangement referred to was inadequate for the accommodation of passengers. But if inadequate, or if the transfer company was allowed to charge exorbitant prices, it was for passengers to complain of neglect of duty by the railroad company and for the constituted authorities to take steps to compel the company to perform its public functions with due regard to the rights of passengers. The question of any failure of the company to properly care for the convenience of passengers was not one that, in any legal aspect, concerned the defendants as licensed hackmen and cabmen. It was not for them to vindicate the rights of passengers. They only sought to use the property of the railroad company, to make profit in the prosecution of their particular business. A hackman, in no wise connected with the railroad company, cannot, of right and against the objections of the company, go upon its grounds or into its station or cars for the purpose simply of soliciting the custom of passengers; but, of course, a passenger upon arriving at the station, in what-

ever vehicle, is entitled to have such facilities for entering the company's depot as may be necessary."

If the traveling public are not properly and adequately served by the Kirwan Transfer Company, or the charges of transfer are excessive, either or both, and the complainant proposes to continue the arrangement with Mr. Kirwan, as contained in the agreement of December 27, 1907, without requiring him to improve the service so rendered, and to exclude others from using its station and depot grounds, for like services, we think the public would have a full and complete remedy by application to the public service commission, or by application of the attorney general, under the Act of 1913, P. L. 1386, Article III, Section 8, Subdivision "b" and Sections 33 and 34 of said act.

As to paragraph "d."

Has the complainant an adequate remedy at law?

We understand the authorities in Pennsylvania, upon this question, to be as follows: "A Court of Equity has jurisdiction in all cases where the remedy at law is not only inadequate and incomplete, but also where it is inconvenient": Pa. R. R. Co. v. Bogert, 209 Pa. 589; Clauer v. Clauer, 22 Pa. Superior Ct. 395.

A bill may be sustained in equity, solely on the ground that it is the most convenient and effective remedy, and this is especially so when the remedy at law is obviously inconvenient and of doubtful adequacy": Appeal of Brush Elec. Co., et al., 114 Pa. 574; Conemaugh Gas Co. v. Jackson Farm Gas Company, 186 Pa. 443; Apollo Trust Company v. Safe Deposit and Title Guaranty Co., 31 Pa. Superior Ct. 524.

"Thus, equity will retain jurisdiction, where the remedy at law would lead to the multiplicity of suits": Bank of Kentucky, 3 Schuylkill Bank, 1 Parsons 180; McGinn v. Benner, 180 Pa. 396; Johnston v. Price, et al., 172 Pa. 427; Gray v. Citizens Gas Company, 206 Pa. 303.

"While a chancellor acts as of grace, such grace some-

times becomes a matter of right to the suitor, and when it is clear that the law cannot give protection and relief, the chancellor can no more withhold his grace than the law can deny protection, or relief if able to give them": Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540.

"In order to oust the jurisdiction of a Court of Equity, the remedy or supposed remedy at law, must be full, adequate and complete.

"Equitable jurisdiction does not depend on the want of a common law remedy, but may be sustained on the ground that it is the most convenient remedy.

"Equity seeks to prevent unnecessary litigation by disposing in any one proceeding, of all the questions which arise affecting many persons." Johnston v. Price, et al., 172 Pa. 427; Penn Iron Co., Limited, v. City of Lancaster, 25 Pa. Superior Ct. 478.

To substantially the same effect, as the foregoing decisions, are the following: Philadelphia Ball Club v. Lajoie, 202 Pa. 210; Weir v. Mundell, 3 Brew. 594; Bierbower's App., 107 Pa. 14; Harper's App., 109 Pa. 9.

We also quote from the opinion of the Supreme Court of the United States, in the case of Donovon v. Pennsylvania Company, 199 U. S. R., commencing at the bottom of page 304.

"It only remains to inquire as to the competency of a court of equity to give the railroad company the relief it sought. The defendants insist that equity cannot properly interfere. But the inadequacy of a legal remedy in such a case as this one is quite apparent. According to the record the attempt of the defendants, despite the objections of the company, to use its station house and depot grounds for the purpose of meeting passengers and soliciting their patronage, was of constant, daily, almost hourly occurrence. The case was one of a continuing trespass, involving injury of a permanent nature. A suit at law could only have determined the particular wrong occurring on a particular occasion, and would not reach other wrongs of a like character that would

occur almost every hour of each day, as passengers arrived at the station of the company. The same state of things existed in reference to such use of the sidewalk in front of the passenger station as unduly interfered with the rights of passengers arriving and departing. Only a court of equity was competent to meet such an unusual emergency, and by a comprehensive decree determine finally and once for all the entire controversy between the parties—thus avoiding a multiplicity of suits and conserving the public interests. No remedy at law would be so complete or efficacious as a suit in equity in such a case as this one."

Mr. Graham, having testified that he expected to continue soliciting business on the company's grounds, until the court ordered him to stop, and he having refused to stop, after having received notice from the complainant's representatives, and under the facts disclosed in this case, we regard the remedy by injunction as the only adequate and proper remedy, and the only remedy whereby a multiplicity of suits may be avoided, and the matter determined in one proceeding.

Some other questions have been raised by the defendant, in this case, in addition to those already discussed, which we will now proceed to dispose of.

It appears in the evidence offered by the defendant, that for the past three or four weeks, the New Park Hotel bus has been discontinued running to the station. The defendant says, in his evidence, that he has an arrangement with George Shores, the hotel proprietor.

Q.—Go on and state what that arrangement is. A.— He said that the Ward House had the first place up there by the depot and he had the next, and for me to drive in there and take it and haul passengers for the New Park Hotel.

Q.—And haul them where? A.—Back and forth from the depot to his hotel and take them to the depot.

Q.—Have you done that? A.—Yes, sir.

Q.—Have you occupied the ground that he indicated to you?  A.—Yes, sir; whenever I could get into it.

On cross-examination, he further testified as follows:

Q.—You say you are using the place where the Park Hotel bus stood.  How can you stand two busses upon the ground where one bus used to stand?  A.—There is times we don't only stand one there.  Mr. Kirwan had a hack in there.  Sometimes he drives in and takes both places.

Q.—You don't pretend you can stand both of your busses upon the same amount of ground the Park Hotel used to occupy?  A.—I don't know as it belongs to anybody with any more right than me.

Q.—Answer the question.  A.—No, I wouldn't.

Q.—When you have both busses at the upper station, you do not have both on the ground where the Park Hotel bus used to stand?  A.—One stands there and one the other side.

Q.—That is upon the ground of the Lehigh Valley, that is not at any time used by the Park Hotel bus?  A.—Yes, sir.

Q.—And you solicit for both busses?  A.—Yes, sir.

Q.—So far as your business permits you, you have both busses meet every train?  A.—Yes, sir.

George Shores, the proprietor of the New Park Hotel, was called by the defendant as a witness, and testified as follows:

Q.—And when did you cease to operate that bus?  A.—About three weeks ago, I think.

Q.—Have you any arrangement with the defendant, J. F. Graham, with reference to taking your passengers to the depot from the hotel, and bringing passengers to it from the station?  A.—Yes, sir.

Q.—State what that arrangement is.  A.—Well, I told him to go ahead and carry the passengers, until this thing was settled.  I had to put my team on the State road, and they wanted them then, or not at all, and I

told Mr. Graham to take my passengers, until this was settled.

Q.—What did you say to him about using the bus grounds? A.—I told him he could have my place at the depot so far as I cared. That was next to the Ward House bus.

If Mr. Graham were running a bus for the New Park Hotel, exclusively, by standing at the station and soliciting passengers, and this was all he and his men were doing, or attempting to do, another and a different question might arise; but just how this arrangement between the defendant and Mr. Shores, can operate to permit the defendant to run two jitney busses, under the circumstances of this case, and in the manner he is doing at this station, we cannot see, and therefore conclude this matter as presented, cannot help the defendant in going to the upper station with his men and himself, soliciting business for the individual profit and advantage of the defendant, without the consent, and against the objections, of the complainant.

Attorneys for the defendant, on the argument of the case, suggested that if the court felt bound to follow the rule laid down by the case of Donovon v. Pennsylvania Company, 199 U. S. R. 295, and State, ex rel., Sheets, Atty. Gen., v. Union Depot Company, 75 Northeastern Reporter 633, and the case therein cited, sustaining these decisions, that an exception should be made, and those cases not followed, because of the peculiar situation of the depot grounds at this station. And further, that Towanda is not a large city, and it is not a union depot, constantly crowded with through and other passengers, and that the duty of the complainant to all of its passengers is finally terminated by affording them a suitable alighting place from its trains, at its station, and that it owes them no duty of providing them with hacks or conveyances to the hotels or other places of residence in the borough, or elsewhere, &c.

It is a fact that a person who desires to solicit business

of hauling passengers from the incoming trains at its station, cannot get nearer the station than 1,200 feet or more without passing over and standing on the ground of the railroad company, which are used by it, in connection with its station and tracks at this point, and at that distance, the busses would have to stand in the street or on private grounds.

We have considered, carefully, this branch of the case, and cannot see where the situation of the station, or the number of passengers received and discharged at its station, makes any difference with the principal question involved in this case.

It may be suggested that the railroad company has discharged its duty to its passengers, when they furnish them a suitable and safe alighting place from its trains, at its station, and that it owes them no duty of providing them with hacks or conveyance to their homes, or hotels, in the borough, or elsewhere, and that it has no control over them after leaving the station, but we cannot see how such facts can have much, if any, weight in disposing of the question at issue in this case at bar. The company cannot be deprived of its control over its own property. The company is responsible for the safety and comfort of its passengers while upon its depot grounds and when there for business with the company, and the courts hold, that the company has a right to the control, management and regulation of the manner that its station and ground shall be used and occupied by the public, who have no contractual relations with it, and who are there in the prosecution of their own private business.

There is no necessity or little profit in extending the discussion of this matter further.

Under the clear weight of authorities, we feel compelled to sustain this bill for an injunction.

*Error assigned* was decree of the court.

*I. McPherson,* with him *Fanning & Kaufman,* for appellant.—This contract regulation at this station is not only an unreasonable and unnecessary one, but it is of such a nature and character that a court, neither of law or equity, will lend its aid to enforce: Sanford v. R. R. Co., 24 Pa. 378; Cumberland Val. R. R. Co.'s App., 62 Pa. 218; Coleman v. Penna. R. R. Co., 242 Pa. 304.

There are many decisions of other states to the effect that a railroad company has no authority to make such a contract for an exclusive privilege: Kalamazoo Hack & Bus Co. v. Sootsma, 84 Mich. 194; Montana Union Railroad Co. v. Langlois, 9 Mont. 419, 8 L. R. A. 753; McConnell v. Pedigo, 92 Ky. 465.

All the parties in interest especially Daniel Kirwan, are not parties to the bill, and for that reason alone, it should be dismissed.

*J. Roy Lilley,* with him *Wm. P. Wilson,* for appellee.—A railroad company may exclude a hackman from coming upon its depot premises to solicit business and may contract with one exclusively to furnish the means to carry incoming passengers, or their baggage and merchandise, from its station, and may grant to him the exclusive right to solicit there the patronage of such passengers: P. & R. Ry. Co. v. Godfrey, 28 Pa. C. C. R. 326; Depot Carriage, Etc., Co. v. K. C. T. Ry. Co., 190 Fed. 212; B. & A. R. R. Co., v. Brown, 177 Mass. 65; N. Y. H. & H. R. R. Co. v. Scovill, 42 L. R. A. 157; N. & W. Ry. Co. v. Old Dominion Baggage Transfer Co., 50 L. R. A. 722; Heading v. Gallagher, 64 L. R. A. 811; Ohio v. Union Depot Co., 68 L. R. A. 792; Union Depot & Ry. Co. v. Meeking, 94 Pac. 16.

No attempt has been made to point out in what way the defendant's rights have been prejudiced by failing to join Daniel Kirwan in this suit and no such injury can be shown. The question has been disposed of in the opinion in N. Y. & H. H. R. R. Co. v. Scovill, 42 L. R. A. 157.

OPINION BY PORTER, J., October 9, 1916:

The only question properly raised by the specifications of error in this case is whether a railroad company, having made an arrangement with a transfer company, or hackman to furnish at its passenger station, from time to time, all vehicles necessary for the accommodation of passengers arriving there on its trains, may legally exclude from its depot grounds or passenger station all other hackmen or expressmen coming to either for the purpose only of soliciting for themselves the custom or patronage of passengers. Mature consideration of this question, in the light of numerous authorities, has led us to the conclusion that but little can with profit be added to the opinion of Judge MAXWELL, of the court below, which will appear in the report of this case. Whatever a railroad company does as a common carrier, it is compelled to do for all without discrimination. Whatever it may lawfully do outside of its lawful obligations as a common carrier is a matter of favor, and not of right: Cumberland Valley Railroad Co.'s App., 62 Pa. 218; Donovon v. Pennsylvania Co., 199 U. S. 279. The court below, in entering the decree complained of, relied principally upon the authority of the case last cited, to which may be added, as additional authorities sustaining the decree, the following: B. & A. Railroad Co. v. Brown, 177 Mass. 65; N. Y., N. H. & H. R. R. Co. v. Scovill, 71 Conn. 136; Godlout v. St. Paul Union Depot Co., 47 L. R. A. 532; Norfolk & Western Ry. Co. v. Baggage Transfer Co., 50 L. R. A. 722; Hedding v. Gallagher, 64 L. R. A. 811; State of Ohio v. Union Depot Co., 71 Ohio 379; Dingman v. Duluth S. S. & A. Ry. Co., 164 Mich. 328; N. Y. C. & H. R. R. Co. v. Ryan, 129 N. Y. 55. It was not necessary that Daniel Kirwan, with whom the plaintiff had made the contract to furnish vehicles sufficient for the accommodation of all passengers arriving at the station and to whom it had granted the exclusive privilege to solicit the patronage of such passengers in the transfer of their persons and baggage, should be

made a party of this bill. The bill was not founded upon any right which the plaintiff had acquired through any covenant in the contract and this defendant had no rights founded on the contract. The existence of the contract was only material for the purpose of showing that the plaintiff had made some contract which required the person to whom it granted the exclusive privilege to solicit patronage at its station to provide vehicles adequate for the convenience of passengers arriving. When the defendant was notified that the plaintiff had made a regulation that another should have the exclusive right to enter its grounds for the purpose of soliciting patronage and that the defendant must desist from doing so, a subsequent entry by the latter for the forbidden purpose was unlawful, and this plaintiff had the right, without joining any other person, to seek to have the offender restrained from the commission of a continuing trespass.

The decree is affirmed and the appeal dismissed at costs of the appellant.