CANARY TAXICAB COMPANY v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Appellant.—294 S. W. 88.

Court en Banc, February 15, 1927.

**1. TAXICAB COMPANY: Exclusive Privileges at Railroad Station.** A railroad company, as long as it thereby affords reasonable accommodations to the public and violates no constitutional or statutory provision, may grant exclusive privilege to one taxicab company to solicit patronage on railroad station grounds.

**2. ———: ———: Use by Railroad of Grounds.** A railroad company's station house and depot grounds, like its locomotives and other property and appliances employed in the transportation of passengers and freights, must be devoted primarily to public use to the extent necessary for the public objects intended to be accomplished by the construction and maintenance of the railroad as a highway. But the company may establish such reasonable rules relating to the public use of its property, as the public convenience and its own interests may suggest, provided only that such rules are consistent with the ends for which it was created and not inconsistent with public regulations legally established for the conduct of its business. It may use the property for the purpose of making profit for itself, but always subject to the condition that the property must be devoted primarily to public objects, without discrimination among passengers and shippers. It is not bound so to use it that others, having no business with it and no occasion to use its facilities for purposes of transportation, may make profit out of its use for themselves.

**3. ———: ———: Property Right.** A railroad company has a right to the exclusive lawful use and enjoyment of its corporate property for all purposes not connected with the operation of the railroad.

**4. ———: ———: Monopoly: Constitutional and Statutory Inhibition.** Section 23 of Article XII of the Constitution, declaring that "no discrimination in charges or facilities in transportation shall be made between transporta-

tion companies and individuals, or in favor of either, by abatement, draw-back or otherwise," relates to facilities employed in transportation and which a railroad company undertakes or is compelled to furnish in its capacity as a common carrier. And the statutes (Secs. 9975, 9985, R. S. 1919) even more clearly limit protection against discrimination to corporations and individuals who have a right to demand and receive a particular facility or service from a railroad company for the transportation of passengers or freight. They only inferentially inhibit monopolies, and in that respect are directed against discrimination and preference among passengers or shippers who have a right to demand that a railroad company employ its transportation facilities for their accommodation.

**5. MONOPOLY: Constitutional and Statutory Inhibition: Concourse Belonging to Railroad Company.** The defendant railroad company is the owner of Union Station in St. Louis, a part of which is "the Concourse," a place on the side of the station, and between its walls and a public street, into which eighteen taxicabs can enter for the purpose of receiving or discharging passengers. The Concourse is not in the street, but is wholly on property owned by and in the possession of defendant, which entered into a contract with a taxicab company by which it granted to said company the exclusive use of the Concourse for a rental of three hundred dollars per month, and in return the company agreed to hold defendant free and harmless from any claim or liability arising out of its use of the place, and to furnish adequate facilities for serving the public with taxicabs, and to subject itself to the rules and regulations of defendant. The plaintiff, a competing taxicab company and a corporation engaged as a common carrier of passengers and baggage in the city, brought suit to enjoin defendant from interfering with plaintiff in the use of the Concourse in receiving and delivering passengers, and asked for a mandatory injunction compelling defendant to open the Concourse to the free and unrestrained enjoyment thereof, on the theory that said contract and exclusive use constituted a monopoly, in violation of the Constitution (Sec. 23, Art. 12) and the statutes (Secs. 9975, 9985, R. S. 1919). **Held,** that said contract is not forbidden by either the Constitution or statutes; that no law compels defendant as a common carrier to furnish its passengers and shippers with taxicab service to and from its station, and its effort to supply them with such facilities was in the nature of an extra service, primarily for their convenience and benefit; that no duty or privilege thereby arose to those engaged in the taxicab business for hire; that no duty rests upon defendant to use its property for the profit of those who have no right to demand that its transportation facilities be employed for their accommodation; that plaintiff's complaint is not made by or in behalf of defendant's passengers or shippers, but on its own behalf and for its own profit, and there being no allegation or proof that the present taxicab service does not furnish fair and adequate service and accommodation to the traveling public in the use of defendant's facilities as a common carrier, the injunctive relief asked cannot be granted. [Distinguishing Kansas City Terminal Ry. Co. v. James, 298 Mo. 497, and Cravens v. Rodgers, 101 Mo. 247.]

---

Corpus Juris-Cyc. References: **Carriers,** 10 C. J.; Section 1069, p. 649, n. 44 New; Section 1075, p. 657, n. 15 New; Section 1076, p. 657, n. 18. **Constitutional Law,** 12 C. J., Section 205, p. 775, n. 42.

Appeal from Circuit Court of City of St. Louis.—*Hon. Victor H. Falkenhainer,* Judge.

REVERSED.

*T. M. Pierce* and *Samuel H. Liberman* for appellant; *J. L. Howell* and *R. E. Blodgett* of counsel.

(1) The discrimination inhibited by Section 23, Article XII, of the Constitution, and Sections 9975 and 9985, Revised Statutes 1919, refers and applies only to facilities in transportation that a railroad company is required by law to provide in its capacity as a common carrier. Christie v. Railroad, 94 Mo. 453; Atchison Co. v. Denver Railroad Co., 110 U. S. 667; The Express Cases, 117 U. S. 1; Railroad v. Pullman Co., 139 U. S. 79; Donovan v. Pennsylvania Co., 199 U. S. 279; Skaggs v. Kansas City Term. Ry. Co., 233 Fed. 827; Old Colony Railroad Co. v. Tripp, 147 Mass. 35; N. Y. Central Ry. Co. v. Sheeley, 27 N. Y. Supp. 185; Oregon Short Line Ry. Co. v. Davidson, 33 Utah, 370; Norfolk & Western Ry. Co. v. Old Dominion Baggage Co., 99 Va. 111. (2) A railroad company may confer upon one taxicab company the exclusive right to use a portion of its premises for taxicabs in the solicitation of business. Wiggins Ferry Co. v. Railroad, 73 Mo. 389, 128 Mo. 224; Home Tel. Co. v. Sarcoxie Tel. Co., 236 Mo. 144; Cab Co. v. Term. Railroad Assn., 6 Mo. P. S. C. 19; The Express Cases, 117 U. S. 1; Railroad Co v. Pullman Co., 139 U. S. 79; Donovan v. Pennsylvania Co., 199 U. S. 279; Depot Carriage Co. v. Kansas City Term. Ry. Co., 190 Fed. 212; Skaggs v. Kansas Term. Ry. Co., 233 Fed. 827; Kates v. Atlanta Baggage Co., 107 Ga. 636; Old Colony Railroad Co. v. Tripp, 137 Mass. 35; New York Railroad Co. v. Scovill, 71 Conn. 146; Hedding v. Gallagher, 72 N. H. 377; Thompson's Express Co. v. Whitemore, 102 Atl. 692; State ex rel. Sheets v. Union Depot Co., 71 Ohio St. 379; Baggage Co. v. City of Portland, 84 Ore. 343; N. Y. Cent. Ry. Co. v. Sheeley, 27 N. Y. Supp. 185; New York Railroad Co. v. Bork, 23 R. I. 219; Oregon Short Line v. Davidson, 33 Utah, 370; Kenyon Co. v. Oregon Short Line, 220 Pac. (Utah), 382; Rose v. Pub. Serv. Comm., 75 West Va. 1: N. & W. Ry. Co. v. Old Dominion Baggage Co., 99 Va. 111.

*Thomas L. Anderson* for respondent.

No discrimination in charges or facilities in transportation shall be made between transportation companies and individuals or in favor of either. Constitution, Sec. 23, Art. XII; Kansas City Term. Ry. Co. v. James, 251 S. W. 55; Cravens v. Rogers, 101 Mo. 252; R. S. 1919, secs. 9975, 9985; Penn. Co. v. Chicago, 181 Ill. 289; Montana Ry. Co. v. Langlois, 9 Mont. 419; McConnell v. Pedigo, 92 Ky. 465; Lucas v. Herbert, 148 Ind. 64; Indianapolis Union Ry. Co. v. Dohn, 153 Ind. 10.

ATWOOD, J.—This is a proceeding for injunctive relief and damages commenced in the Circuit Court of the City of St. Louis, where plaintiff received judgment. The petition alleged that plaintiff was a corporation engaged in the taxicab business in the city of St. Louis and a common carrier of passengers and baggage; that defendant was a railroad corporation, owning and operating the Union Station in the city of St. Louis, located between Eighteenth and Twentieth Streets, fronting on Market Street; that Nineteenth Street was an open public street crossing Market Street and entering Union Station at a place in the station known as the Concourse; that defendant was a common carrier, and in violation of Section 23, Article XII, of the Constitution of the State of Missouri, defendant closed the Concourse to all taxicab companies except the Brown Cab Company, a competitor of plaintiff, and entered into a contract with the Brown Cab Company whereby, for a consideration of three hundred dollars a month, the latter was given the exclusive use of the Concourse; that defendant thereby discriminated in its facilities for transportation in favor of the Brown Cab Company and against plaintiff, and thus created a monopoly, in violation of the statutes of the State of Missouri and of the Constitution of the State, particularly Sections 9975 and 9985, Revised Statutes Missouri, 1919. In addition to damages plaintiff sought relief by injunctive orders, restraining defendant from interfering with plaintiff in the use of the Concourse in receiving and delivering passengers and baggage, and a mandatory injunction compelling defendant to open the Concourse to the free and unstrained enjoyment thereof by plaintiff in the transaction of its taxicab business.

Defendant's return consists of a general denial and averments that the Concourse was part of the Union Station, wholly upon property owned and in the possession of defendant, and that since the erection of the station in 1894 defendant has owned, maintained, operated and controlled the Concourse as its own private property; that no part of the Concourse was on or in or upon any open public street, or any part of any public street; that Nineteenth Street does not extend to, in, upon or on any portion of the Concourse; that the Concourse has never been open to the public; that in the ordinary conduct of its business defendant is required to designate and select a single responsible agency through which passengers coming into the Concourse might receive attention and accomodation; that if competitive solicitation by plaintiff and other cabmen were permitted on the Concourse the travelling public would be subjected to annoyance and inconvenience as a result of the confusion and riot resulting from such unrestrained competitive solicitation, and that the selection of a responsible agency was necessary in order to prevent a nuisance upon defendant's property; that defendant's con-

tract with the Brown Cab Company does not violate any of the statutory or constitutional provisions of the State of Missouri; and that if Section 23, Article XII, of the Constitution, and Sections 9975 and 9985, Revised Statutes 1919, were so construed as to prevent defendant from leasing the Concourse to one responsible agency the said constitutional provision and statutory provisions, and any order, decree or judgment of the court so construing them, would deprive the defendant of its property without due process of law, deny to the defendant the equal protection of the laws and impair the obligation of defendant's contract with the Brown Cab Company, in violation of the State Constitution forbidding the taking of private property for a public use.

Plaintiff's reply consisted of a general denial of the averments contained in defendant's answer and return.

On behalf of plaintiff there was testimony that immediately prior to October 1, 1925, the Concourse was closed, and it was the custom of taxicab companies to pull up to the outside of the Union Station, the cabs taking their turns, first come first served; that the Union Station extends from Eighteenth to Twentieth Streets on the south side of Market Street, and the Concourse is directly even with Nineteenth Street, which stops right at the Concourse; that about eighteen cabs could get into the Concourse; that at no time prior to October 1, 1925, had the Concourse ever been used by plaintiff or by any other cab company except the Columbia Taxicab Company and Marshall Bros., licensees of the defendant; and that since the making of the present contract no cab company, other than the Brown Cab Company, was permitted to get into the Concourse. Plaintiff introduced in evidence the contract entered into between defendant and Brown Cab Company on October 1, 1925. By its terms defendant granted to the Brown Cab Company the right to use its Concourse in the Union Station, at a rental of three hundred dollars a month, and the Brown Cab Company in return agreed to hold the defendant free and harmless from any claims or liability arising out of its use of the Concourse, and further agreed that it would furnish adequate facilities for serving the public with taxicabs and to subject itself to the rules and regulations of defendant.

Plaintiff and defendant stipulated and agreed that the case be submitted on the pleadings, it being admitted that evidence had been submitted to sustain the allegations in the petition and the answer. It is further stipulated and agreed that defendant offers three witnesses who if present would testify that "if the competitive solicitation by the plaintiff and all other cabmen and hackmen were permitted upon and within said Concourse located on its private premises, the traveling public would be subjected to annoyance, confusion would arise, riot would be engendered and general conditions would

become intolerable;" and that in rebuttal plaintiff offers three witnesses who if present would testify that "if the Concourse was thrown open to the taxicab companies, that no confusion, disorder or riot would occur; that on the other hand, they would say that the traveling public would be fully protected in a careful and in an orderly manner and that there would be no confusion or disturbance of any kind and that they would subject themselves to any regulations furnished by the Traffic Council of the City of St. Louis, or the Terminal Railroad Association, the defendant herein, and that the traveling public would receive better terms, better service and be better pleased by conditions that would arise under the circumstances set out heretofore."

On January 18, 1926, the trial judge filed a written memorandum in the case reciting, among other things, that "in granting a permanent injunction in this case, the court does so relying entirely upon the case of K. C. Terminal Ry. Co. v. James et al., 251 S. W. 53, together with cases therein cited to support the court's contention." On January 21, 1926, a judgment and decree was entered wherein the court, after making certain findings of fact, ordered, adjudged and decreed that "defendant be perpetually restrained from granting any rights, privileges or uses of that part of its property in the Union Station known as the 'Concourse' to any other common carrier for hire that it does not now grant to the Canary Taxi Company, plaintiff herein, and that said defendant shall grant to the plaintiff, the Canary Taxi Company, on and after ten days from date, to-wit, the first day of February, 1926, the right to receive and deliver passengers and baggage for hire in the Concourse of the Union Station upon similar conditions and terms that it grants that right to the Brown Cab Company, or any other common carrier for hire. That the defendant herein and its officers, agents, servants and any other person, company or corporation having contractual relations with the defendant be perpetually enjoined and restrained from, either directly or indirectly, interfering with the Canary Taxi Company, plaintiff herein, in the use and occupation of the 'Concourse' in the Union Station, in delivering and receiving passengers and baggage; provided that said defendant is permitted the use of said 'Concourse' to any other common carrier for the purpose of receiving or delivering passengers and baggage." It was further ordered, adjudged and decreed that the plaintiff have and recover of the defendant the damages aforesaid as assessed, to-wit, the sum of three thousand three hundred and ninety dollars, together with the cost of this proceeding.

From the above judgment defendant has appealed.

The law is well settled that hackmen and taxicab drivers may be prohibited from soliciting patronage on railroad station grounds,

but there is some conflict of opinion upon the question of the right of a railroad company to grant such a right to a favored person to the exclusion of all others of like vocation. However, the decided weight of authority particularly reflected in the more recent and seemingly better reasoned decisions, including those of the Supreme Court of the United States, is to the effect that a railroad company, as long as it thereby affords reasonable accommodation to the public and violates no constitutional or statutory provision, may grant such exclusive privilege to one company or person. [Donovan v. Pennsylvania Co. (1905), 199 U. S. 279; Express Cases (1885), 117 U. S. 1; Pullman Cases (1891), 139 U. S. 59; Depot Carriage & Baggage Co. v. Kansas City Term Ry. Co. (1911), 190 Fed. 212; Skaggs v. Kansas City Term. Ry. Co. (1916), 233 Fed. 827; Union Depot & Ry. Co. v. Meeking (1908), 42 Col. 89; New York, N. H. & H. Railroad Co. v. Scovill (1898), 71 Conn. 136; Kates v. Atlanta Baggage Co. (1899), 107 Ga. 636; Mader v. City of Topeka (1920), 106 Kan. 867; Old Colony Ry. Co. v. Tripp (1888), 147 Mass. 35; Godbout v. St. Paul Union Depot Co. (1900), 79 Minn. 188; United Comm. Travelers v. Marshall Bros. Livery Co. (Mo. Pub. Service Com. 1918) P. U. R. 1918 E. 391; Hedding v. Gallagher (1903) 72 N. H. 377; Thompson's Express Co. v. Mount (1920), 111 Atl. (N. J.) 173; New York C. & H. R. R. Co. v. Ryan (1911), 129 N. Y. Supp. 55; State ex rel. Sheets v. Union Depot Co. (1905), 71 Ohio St. 379; Baggage Co. v. Portland (1917), 84 Ore. 343; Lehigh Val. Railroad Co. v. Graham (1916), 64 Pa. Super. Ct. 437; Clisbee v. Chicago R. I. & G. Ry. Co. (Tex. Civ. App. 1921), 230 S. W. 235; Oregon Short Line Co. v. Davidson (1908), 33 Utah, 370; Kenyon Hotel Co. v. Oregon Short Line Co. (1923), 62 Utah, 364; Norfolk & W. Ry. Co. v. Old Dominion Baggage Co. (1901), 99 Va. 111; Rose v. Public Service Comm. (1914), 75 W. Va. 1.]

Undoubtedly a railroad company's station house and depot grounds, like its locomotives and other property or appliances employed in the transportation of passengers and freight, must be devoted primarily *to public use to the extent necessary for the public objects intended to be accomplished* by the construction and maintenance of the railroad as a highway. In applying this principal Mr. Justice HARLAN, in Donovan v. Pennsylvania Company, 199 U. S. 1. c. 293-4, said:

"It by no means follows, however, that the company may not establish such reasonable rules, in respect of the use of its property, as the public convenience and its interests may suggest, provided only that such rules are consistent with the ends for which the corporation was created and not inconsistent with public regulations legally established for the conduct of its business. Although its functions are public in their nature, the company holds the legal

title to the property which it has undertaken to employ in the discharge of those functions. And as incident to ownership it may use the property for the purposes of making profit for itself; such use, however, being always subject to the condition that the property must be devoted primarily to public objects, without discrimination among passengers and shippers, and not be so managed as to defeat those objects. It is required, under all circumstances, to do what may be reasonably necessary and suitable for the accommodation of passengers and shippers. But it is under no obligation to refrain from using its property to the best advantage of the public and of itself. It is not bound to so use its property that others, having no business with it, may make profit to themselves. Its property is to be deemed, in every legal sense, private property as between it and those of the general public who have no occasion to use it for purposes of transportation.''

Among the outstanding reasons assigned in the above cases for the majority rule are, the right of the railroad company to the exclusive use and enjoyment of its corporate property for all purposes not connected with the operation of its roads; and its duty to subserve, primarily, the convenience, comfort and safety of passengers and the wants of shippers; with the consequent right to establish rules in its own interest, and also to the end that passengers be not annoyed, disturbed or obstructed in the use either of its station house or of the grounds over which such passengers, whether arriving or departing, would pass. In this connection Mr. Justice Harlan, in the case last above cited, further said, l. c. 296-7:

''In maintaining a highway, under the authority of the State, the first and paramount obligation of the railroad company was, as we have already said, to consult the comfort and convenience of the public who used that highway. To that end it could use all suitable means that were not forbidden by law. In its discretion it could accept the aid or stipulate for the services of others. But, after providing fully for the wants of passengers and shippers, it did not undertake, expressly or by implication, to so use its property as to benefit those who had no business or connection with it. It is true that by its arrangement with the railroad company the Parmelee Company was given an opportunity to control, to a great extent, the business of carrying passengers from the Union Passenger Station to other railway stations and to hotels or private houses in Chicago. But in a real, substantial, legal sense, that arrangement cannot be regarded as a monopoly in the odious sense of that word, nor does it involve an improper use by the railroad company of its property. That arrangement is to be deemed, not unreasonably, a means, devised for the convenience of passengers and of the railroad company, and as involving such use by the company of its property as is con-

sistent with the proper performance of its public duties and its owner-ship of the property in question.    If the company by such use of its property also derived pecuniary profit for itself, that was a matter of no concern to the defendants and gave them no ground of complaint.''

The above reasons distinctly exist in the instant case.    Under the admitted facts the Concourse has never been thrown open for the use of hacks or taxicabs in general.    It has either been entirely closed to such use, or the exclusive use given to certain licensees with which it has contracted from time to time.    There is nothing in the case that even remotely suggests a dedication of the Concourse to the use of indiscriminative hackman and taxicab drivers, and it is doubtful whether defendant, in disregard of its duty to protect its passengers from annoyance and danger, could thus surrender control of its property—certainly a deliberate and unequivocal intention to surrender and abandon permanently its property to such public use would have to the shown.    [New York Central & H. R. R. Co. v. Ryan, 129 N. Y. Supp. 1. c. 57.]    Its location, character of construction, control and every use stamp it as defendant's private property and for the purpose of this suit it must be regarded as such.

It must also be borne in mind that we have no law that compels defendant as a common carrier to furnish its passengers and shippers with hack or taxicab service to and from its station, and any effort it has made to place such facilities at their disposal is in the nature of an extra service primarily for the convenience and benefit of such passengers and shippers, and of which they may avail themselves or not at their option.    No duty or privilege thereby arose or was extended to those engaged in the hack or taxicab business for hire, and none was intended until a contractual relation had been established between defendant and some one or more persons engaged in that business.

It is further significant that no complaint is here made by or in behalf of any of defendant's passengers or shippers, nor is there any supported allegation that the present taxicab service does not furnish fair and adequate service and accommodation to the public in its use of defendant's facilities as a common carrier.    Plainly stated, this respondent came into court seeking this extraordinary writ and damages solely for its own behoof, and the trial court rendered judgment on the theory that defendant was acting in violation of some constitutional or statutory provision or provisions as heretofore construed by this court.

The written memorandum filed by the trial judge indicates that he was moved to judgment by our opinion in Kansas City Terminal Ry. Co. v. James, 298 Mo. 497, and cases there cited.    The writer of the leading opinion in that case had the full concurrence of only

one other judge. Three more judges concurred only in the result and stated their views in a separate opinion. The remaining two judges concurred in the dissenting opinion filed. Except on matters showing a concurrence of a majority of the members of the court no rule or precedent binding in subsequent cases was thereby established. The separate concurring opinion seems to hinge upon the Terminal Company's treatment of its property known as the Plaza, it apparently having been shown or conceded that "everybody was invited to use it as a public thoroughfare." As we have heretofore suggested no such condition ever existed as to the Concourse, and in this respect the present case is clearly distinguishable. We have carefully examined both the leading and the separate concurring opinions in the Kansas City Terminal Railway case and the only holdings fully concurred in that might be construed as precedents in any subsequent case appear to be that the purpose and effect of the arrangement there shown "was to give the Shaw Transfer Company, for a consideration, a monopoly of the taxicab business in Kansas City," and that "the case of Cravens v. Rodgers, 101 Mo. 247, is directly in point and should be followed."

As to the first concurrence reached in the Kansas City case, that a monopoly was created, we again call attention to Mr. Justice HARLAN's ruling on a similar state of acts in Donovan v. Pennsylvania Company, 199 U. S. 1. c. 297, that such an "arrangement cannot be regarded as a monopoly in the odious sense of that word." If it was appropriate that such a distinction be thus clearly drawn by the highest court of the land more than twenty years ago, when the idea generally prevailed that all monopolies were odious, it is of vital importance that in this day of encouraged regulated monopolies, before condemning any arrangement as monopolistic and against public policy, we place a finger upon the particular legislative provision that makes it so.

Counsel for respondent has attempted to do this by designating Section 23, Article 12, of the Constitution of Missouri, and Sections 9975 and 9985, Revised Statutes 1919. Neither of these two latter sections was construed either in Kansas City Terminal Ry. Co., 298 Mo. 497, or in Cravens v. Rodgers, 101 Mo. 247. Section 23, Article 12, of the Constitution was construed in the leading opinion of the Kansas City Terminal case. This opinion, however, received the full concurrence of only two judges, and the separate concurring opinion contains no reference whatever to this constitutional provision.

The case of Cravens v. Rodgers,. 101 Mo. 247, decided by this court in 1890, was an injunction suit between the owners of two competing hack lines operating between the city of Gallatin and the depot of the Chicago, Rock Island & Pacific Railroad, about a half

mile distant.  Plaintiffs were the owners of a platform which had been constructed at the expense of their predecessor in business on railroad property with the railroad company's consent for the exclusive use and benefit of this particular hack line in discharging and receiving passengers and baggage to and from this railroad station. The railroad company was not a party to the suit, and apparently no constitutional or statutory provision was specifically pleaded, and the only reference in the opinion to either is the language that "monopolies are obnoxious to the spirit of our laws, and ought to be discouraged.  This is the spirit of our constitutional provision which prohibits 'discrimination in charges, or facilities in transportation  .  .  .  between transportation companies and individuals or in favor of either.'  [Art. 12, sec. 23.]"  We entertain the view expressed as to this case by Judge Van Valkenburgh while United States District Judge for the Western District of Missouri in Skaggs v. Kansas City Terminal Ry. Co., 233 Fed. l. c. 830, that "the Supreme Court of Missouri did not undertake in that case to construe this article of the Constitution.  It said that such an agreement was against its spirit, not its terms; and it based its ruling upon its conception of public policy and general law."  Where there is legislation on a given subject we do not understand that it is the function of the judiciary to state public policy in this way.  The highest expression of public policy is a constitutional provision on the subject which expresses the will of the sovereign people.  The next highest expression is that offered by a statute which expresses the public will or policy as construed by the legislative representatives of the people.  The function of the judiciary is to construe *the terms* of such constitutional and statutory provisions and therefrom declare the public policy with reference to the particular facts under consideration.

Section 23, Article XII, of the Missouri Constitution is as follows:

"No discrimination in charges or facilities in transportation shall be made between transportation companies and individuals, or in favor of either, by abatement, drawback or otherwise; and no railroad company, or any lessee, manager or employee thereof, shall make any preference in furnishing cars or motive power."

Section 9975, Revised Statutes 1919, is as follows:

"Railways heretofore constructed, or that may hereafter be constructed in this State, are hereby declared public highways, and railroad companies common carriers.  No railway company, corporation or association shall hereafter make any discrimination in charges or facilities in the transportation of freight or passengers between transportation companies and individuals, nor in the transportation of freight between commission merchants or other persons engaged in the transportation of freight and individuals, in favor

of either, by abatement, drawback or otherwise, nor shall any such company, corporation or association, nor any lessee, manager or employee of any such company, corporation or association make any preference between the parties aforesaid in furnishing cars or motive power, for the purpose aforesaid. Any company, corporation or association, or manager, lessee or employee, violating the provisions of this section, shall forfeit and pay to the party injured the whole amount of such transportation charged, to be recovered before any court of competent jurisdiction: *Provided,* that excursion or commutation tickets may be issued at special rates."

Section 9985, Revised Statutes 1919, is as follows:

"It shall be unlawful for any such common carrier to make or give any undue or unreasonable preference or advantage to any particular person, company or firm, corporation or locality, in the transportation of goods, wares and merchandise of any character, or to subject any particular person, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage with respect to such transportation; and all such common carriers shall afford equal facilities for the interchange of traffic between their respective lines, and for receiving, forwarding and switching cars and delivering property to and from their lines, and to and from other lines and places connected therewith, and shall not discriminate in their accommodation, rates or charges between such connecting lines and places. But this provision shall not be construed as requiring such common carrier to give the use of their tracks or terminal facilities to other common carriers engaged in a similar business."

The above provisions are directed against discrimination, preference and the like, and only thus inferentially inhabit monopolies. The constitutional provision is but declaratory of the common law with reference to the subject of which it treats. [Christie v. Mo. Pac. Ry. Co., 94 Mo. l. c. 458.] The term "facilities" as there used obviously includes only such as are employed "in transportation" and which the railroad company undertakes or is compelled to furnish in its capacity as a common carrier. Such is the effect of the holdings in the Express Cases, 117 U. S. l. c. 27; The Pullman Cases, 139 U. S. 79; and other cases above cited. That this term is to be given the same construction in the above two statutes against discrimination is even more apparent, and it seems reasonably clear that the individuals, companies and corporations who are sought by these constitutional and statutory provisions to be protected against discrimination are only those who have a right to demand and receive the particular facility or service from the railroad company in its capacity as a common carrier. Respondent is not such a person and the Concourse it seeks to use is not such a facility. We rule that

on the facts before us appellant has not discriminated against ·respondent or created a monopoly within the scope of the inhibitions contained in the foregoing constitutional and statutory provisions.

For the reasons above stated the judgment is reversed.

All concur, except *Gantt, J.,* not sitting, and *Graves, J.,* who is absent.